# Exhibit "A"

**11-2014-CA-000963-0001-XX**

Filing # 13054787 Electronically Filed 04/29/2014 02:05:38 PM

)

IN THE CIRCUIT COURT, TWENTIETH
JUDICIAL CIRCUIT, IN AND FOR
COLLIER COUNTY, FLORIDA

CASE NO.:  11-2014-CA-000963-0001-XX
DIVISION:

IBERIABANK, a Louisiana state bank,

     Plaintiff,

vs.

RADNO, INC., a Florida corporation d/b/a
Goldcoast Salads, PETER J. RADNO, SR., an
individual, and PETER P. RADNO, JR., an
individual, PNC BANK, NATIONAL
ASSOCIATION, as Successor by Merger to
RBC BANK (USA), as Successor by Merger to
COMMUNITY BANK OF NAPLES, N.A., and
REGIONS BANK,

     Defendants.

_____/

### COMPLAINT

Plaintiff, IBERIABANK, a Louisiana state bank ("IBERIABANK"), sues Defendants,

RADNO, INC., a Florida corporation d/b/a Goldcoast Salads ("Radno"), PETER J. RADNO,

SR., an individual ("Radno, Sr."), PETER P. RADNO, JR., an individual ("Radno, Jr.")

(collectively, the "Radno Defendants"), PNC BANK, NATIONAL ASSOCIATION, as

Successor by Merger to RBC BANK (USA), as Successor by Merger to COMMUNITY BANK

OF NAPLES, N.A. ("PNC"), and REGIONS BANK ("Regions"), and alleges:

### Parties, Jurisdiction, and Venue

1.    IBERIABANK is a Louisiana state bank authorized to transact business in the

State of Florida.

2.    Radno is a corporation incorporated and existing under the laws of the State of

Florida and doing business in Collier County, Florida.

3.     Radno, Sr. is an individual residing in Collier County, Florida.

4.     Radno, Jr. is an individual residing in Collier County, Florida.

5.     PNC may have or claim to have an interest in the property that is the subject of this action, and is authorized to conduct business in and is engaged in substantial and not isolated business activities in the State of Florida.

6.     Regions may have or claim to have an interest in the property that is the subject of this action, and is authorized to conduct business in and is engaged in substantial and not isolated business activities in the State of Florida.

7.     The Court has jurisdiction of this matter and venue is proper pursuant to Chapter 47, Florida Statutes, because, *inter alia*, the Radno Defendants reside in Collier County, Florida, the Note, as defined below, was executed in Collier County, Florida, the collateral at issue is believed to be located in Collier County, Florida, and the Loan Documents, as defined below, provide for Collier County, Florida as proper venue.

## General Allegations

8.     On or about November 2, 2011, IBERIABANK made a loan to Radno bearing loan number 5300220906 (the "Loan"), which was initially evidenced by that certain Promissory Note in the principal amount of $600,000.00, and which is currently evidenced by that certain Promissory Note dated August 10, 2012 in the principal amount of $1,500,000.00, as modified by that certain Forbearance / Extension / Modification Agreement dated March 4, 2013, and that certain Forbearance / Extension / Modification Agreement dated July 23, 2013 (collectively, the "Note"). True and correct copies of the November 2, 2011 Promissory Note and the Note are attached hereto as Composite Exhibit "A."

9.     The Loan is also evidenced by those certain Business Loan Agreements dated November 2, 2011 and August 10, 2012, both entered into between Radno and IBERIABANK

JAX\1855966_1                          -2-

(together, the "Loan Agreement"). A true and correct copy of the Loan Agreement is attached hereto as Composite Exhibit "B."

10.     The indebtedness owed on the Loan is secured by those certain Commercial Security Agreement dated November 2, 2011 and August 10, 2012, executed by Radno in favor of IBERIABANK (together, the "Security Agreement"). A true and correct copy of the Security Agreement is attached hereto as Composite Exhibit "C."

11.     In the Security Agreement, Radno granted a security interest in equipment to be purchased (the "Collateral"), more particularly described as three major equipment items, a Commercial Generator, Commercial racking, and Commercial Compressor/Dryer, as well as any and all collateral described in that certain UCC-1 Financing Statement filed with the Florida Secured Transaction Registry, bearing Document #201105640629, as modified by those certain UCC-3 Financing Statement Amendment Forms bearing Document #201206423070, #201207097339, #201207145619, #201207342783, #20120758647X, #201207698006, #201207785405, #201208085725, #201208085733, #201308631233, #201308802704, #201308830694, and #20130929320X (collectively, the "Financing Statements"). True and correct copies of the Financing Statements are attached hereto in Composite Exhibit "D."

12.     The indebtedness owed on the Loan is also secured by those certain Commercial Guaranty agreements dated November 2, 2011 and August 10, 2012, executed by Radno, Sr. and Radno, Jr. (the "Guarantors") (collectively, the "Guaranties"). True and correct copies of the Guaranties are attached hereto in Composite Exhibit "E."

13.     Radno defaulted on its obligations under the Note by failing to maintain a debt service coverage ratio equal to or in excess of the Traditional DSCR and failing to maintain a global debt service coverage ratio equal to or in excess of the Global DSCR, as those terms are defined in the Loan Agreement (together, the "Covenant Defaults").

14.     As of October 10, 2013, IBERIABANK and the Radno Defendants entered into that certain Forbearance Agreement (the "First Forbearance Agreement"), wherein the Note was modified and the Radno Defendants admitted to the Covenant Defaults. A true and correct copy of the First Forbearance Agreement is attached hereto as Exhibit "F." The Note, the Loan Agreement, the Security Agreement, the Financing Statements, the Guaranties, and the First Forbearance Agreement, as well as all ancillary documents relating to the Loan, shall herein be referred to as the "Loan Documents."

15.     Radno defaulted on its obligations under the Note, as modified, by failing to make the interest-only payments due thereunder on October 10, 2013, and subsequently thereafter, by failing to make the principal and interest payment due thereunder on March 10, 2014, and by failing to cure the Covenant Defaults.

16.     On March 18, 2014, IBERIABANK sent Rando and the Guarantors a "Notice of Defaults and Demand for Surrender of Collateral" the ("Demand Letter") declaring the total unpaid balance of the Loan, together with all accrued interest and other charges, due and payable in full, demanding payment in full, and demanding a surrender of the Collateral. A true and correct copy of the Demand Letter is attached hereto as Exhibit "G."

<div align="center">

**Count I**
**(Breach of Note, as modified)**

</div>

17.     This is an action for breach of promissory note against Radno seeking damages in excess of $15,000.00, exclusive of interest, costs and attorneys' fees.

18. .    IBERIABANK realleges the allegations of paragraphs 1 through 9 and 13 through 16 above as though set forth herein.

19.     IBERIABANK is the owner and holder of the Note, as modified by the First Forbearance Agreement.

20.　　Radno defaulted under the Note, as modified, as described above.

21.　　By virtue of the defaults described above, IBERIABANK declared, and does hereby declare, the entire indebtedness due under the Note to be immediately due and payable.

22.　　As of the date of this Complaint, the total amount owed by Radno to IBERIABANK under the Note, as modified, was $1,296,854.13 in principal, plus accrued interest, charges, and attorneys' fees and costs, which have and will continue to accrue.

23.　　As a result of the defaults alleged herein, IBERIABANK has retained the undersigned law firm to bring this action and is obligated to pay such firm a reasonable fee for its services, and, under the terms of the Note, as modified, Radno is obligated to pay all costs, fees and expenses, including reasonable attorneys' fees, incurred in the enforcement thereof.

24.　　All conditions precedent to the bringing of this action have been performed, have occurred, or have been waived.

WHEREFORE, IBERIABANK demands judgment against Radno for damages in an amount equal to the unpaid obligations under the Note, together with interest, costs, and reasonable attorneys' fees.

### Count II
### (Breach of Guaranty – Radno, Sr.)

25.　　This is an action for breach of guaranty against Radno, Sr. for damages exceeding $15,000.00, exclusive of interest, costs and attorneys' fees.

26.　　IBERIABANK realleges the allegations of paragraphs 1 through 9, 12 through 16, and 19 through 22 above as though set forth herein.

27.　　IBERIABANK is the owner and holder of those Guaranties executed by Radno, Sr.

28.     As described above, Radno defaulted under the Note, as modified, and Radno, Sr. has breached the terms of his Guaranties by failing to honor the obligations of Radno and the terms of his Guaranties.

29.     IBERIABANK has retained the undersigned law firm to represent it in this action and has obligated itself to pay such firm a reasonable fee for their services in connection with the enforcement of his Guaranties and such amounts are, under the terms of his Guaranties, payable by Radno, Sr.

30.     All conditions precedent to the bringing of this action have been performed, have occurred, or have been waived.

WHEREFORE, IBERIABANK demands judgment against Radno, Sr. for the total amounts due under the Note, in accordance with and pursuant to the terms of those Guaranties executed by him, together with interest, costs and its reasonable attorneys' fees.

<center>

**Count III**
**(Breach of Guaranty – Radno, Jr.)**

</center>

31.     This is an action for breach of guaranty against Radno, Jr. for damages exceeding $15,000.00, exclusive of interest, costs and attorneys' fees.

32.     IBERIABANK realleges the allegations of paragraphs 1 through 9, 12 through 16, and 19 through 22 above as though set forth herein.

33.     IBERIABANK is the owner and holder of those Guaranties executed by Radno, Jr.

34.     As described above, Radno defaulted under the Note, as modified, and Radno, Jr. has breached the terms of his Guaranties by failing to honor the obligations of Radno and the terms of his Guaranties.

35.     IBERIABANK has retained the undersigned law firm to represent it in this action and has obligated itself to pay such firm a reasonable fee for their services in connection with the

enforcement of his Guaranties and such amounts are, under the terms of his Guaranties, payable by Radno, Jr.

36. All conditions precedent to the bringing of this action have been performed, have occurred, or have been waived.

WHEREFORE, IBERIABANK demands judgment against Radno, Jr. for the total amounts due under the Note, in accordance with and pursuant to the terms of those Guaranties executed by him, together with interest, costs and its reasonable attorneys' fees.

## Count IV
## (Replevin)

37. This is an action under Chapter 78, Florida Statutes, against Radno for the replevin of certain personal property located in Collier County, Florida, the value of which is in excess of $15,000.00.

38. IBERIABANK re-alleges the allegations of paragraphs 1 through 11, 13 through 16, and 19 through 22 above, as though set forth herein.

39. IBERIABANK is the owner and holder of the Security Agreement and Financing Statements.

40. In the Security Agreement, Radno granted IBERIABANK a continuing and unconditional security interest in the collateral described therein as a "1st security interest in equipment to be purchased, more particularly described as three major equipment items, a Commercial Generator, Commercial racking, and Commercial Compressor/Dryer."

41. IBERIABANK funded Radno's purchase of such equipment, which was subsequently more particularly described in the Financing Statements.

42. IBERIABANK perfected its security interest in the Collateral by virtue of the Financing Statements.

43.   The Collateral includes the items listed on Exhibit "H."

44.   Due to Radno's default under the Note, as modified, and failure to cure such default following demand, IBERIABANK is entitled to the immediate possession of the Collateral pursuant to the Loan Documents.

45.   To the best of IBERIABANK's knowledge, information and belief, the value of the Collateral is less than the debt owed to IBERIABANK under the Note.

46.·  On March 18, 2014, IBERIABANK, through legal counsel, sent to Radno the Demand Letter, in which it demanded surrender of the Collateral.

47.   Radno has failed and refused to deliver or surrender possession of the Collateral.

48.   The Collateral is being wrongfully detained by Radno.

49.   To the best of IBERIABANK's knowledge, information and belief, Radno is in the possession of the Collateral.

50.   To the best of IBERIABANK's knowledge, information and belief, most of the Collateral continues to be located at 3600 Shaw Blvd., Naples, Florida 34117.

51.   The Collateral has not been taken for any tax, assessment or fine pursuant to law.

52.   The Collateral has not been taken under an execution or attachment against Radno or its property

53.   If the Collateral is in the possession or control of Radno at the time of the issuance of a writ of replevin, and subsequently passes to the possession of third persons before execution of the writ, then IBERIABANK is entitled to execution of the writ against such third persons.

54.   By virtue of the Loan Documents, upon execution of any writ of replevin issued pursuant to Chapter 78, Florida Statutes, IBERIABANK is entitled to possession and control of the Collateral so replevied.

55.     IBERIABANK has sustained damages as a result of Radno's unauthorized use and detention of the Collateral.

56.     IBERIABANK is entitled to all costs, attorneys' fees, the expenses of retaking and selling the Collateral and other damages allowed pursuant to Chapter 78, Florida Statutes, and the Loan Documents.

57.     PNC may have or claim to have an interest in the Collateral described herein. Said interest is subject, subordinate, and inferior to the security interest held by IBERIABANK.

58.     Regions may have or claim to have an interest in the Collateral described herein. Said interest is subject, subordinate, and inferior to the security interest held by IBERIABANK.

59.     All conditions precedent to the bringing of this action have been performed, have occurred, or have been waived.

WHEREFORE, IBERIABANK demands judgment against Radno for possession of the Collateral and the expenses of retaking the Collateral, together with costs and attorneys' fees, and such other and further relief as this Court deems just and proper.

## Count V
### (Foreclosure of Security Agreements)

60.     This is an action to foreclose security interests in certain personal property located in Collier County, Florida, the value of which is in excess of $15,000, exclusive of interest, cost and attorneys' fees, and which is more particularly described in Exhibit "H."

61.     IBERIABANK re-alleges the allegations of paragraphs 1 through 11, 13 through 16, 19 through 22, and 39 through 44 above, as though set forth herein.

62.     As described above, Radno defaulted under the Note, as modified, so it also defaulted under the Security Agreement.

63.     Radno is the present owner of the Collateral and is in possession of the same.

64. The right, title and interest of Radno in the collateral is subject, subordinate, and inferior to the security interest held by IBERIABANK.

65. IBERIABANK is entitled to foreclose its Collateral under the terms of the Loan Documents.

66. IBERIABANK has retained the undersigned law firm to represent it in this action and has obligated itself to pay such firm a reasonable fee for their services in connection with the exercise of IBERIABANK's rights upon the Collateral, and such amounts are, under the terms of the Security Agreement, payable by Radno.

67. PNC may have or claim to have an interest in the Collateral described herein. Said interest is subject, subordinate, and inferior to the security interest held by IBERIABANK.

68. Regions may have or claim to have an interest in the Collateral described herein. Said interest is subject, subordinate, and inferior to the security interest held by IBERIABANK.

69. All conditions precedent to the bringing of this action have been performed, have occurred, or have been waived.

WHEREFORE, based upon Radno's default under the Loan Documents, IBERIABANK prays:

A. That the Court adjudge that IBERIABANK has a lien upon the Collateral for the amounts due under the Note and the Security Agreement, which is superior to all claims, rights, title, interest or equities of Defendants;

B. That the Court adjudge the full amount due to IBERIABANK under the Note and the Security Agreement;

C. That the Court grant IBERIABANK a judgment foreclosing is security interests arising under the Loan Documents, and more specifically, the Security Agreement and Financing Statements;

D.     That the Court adjudge that if the amount due to IBERIABANK is not paid within the time set by the Court, that the Collateral be sold to satisfy IBERIABANK's claim;

E.     That the Court adjudge all claims, rights, title, interest or equities of Defendants and any and all persons claiming by, through, under or against Defendants to be inferior to the security interest held by IBERIABANK on the Collateral, and that such interests be foreclosed;

F.     That the Court retain jurisdiction of this action for any further orders that are necessary and proper, including without limitation, writs of possession and a deficiency judgment; and

G.     That IBERIABANK have such other and further relief as is just and proper.

DATED this 29th day of April, 2014.

ROGERS TOWERS, P.A.

By:

Scott Kennelly
Florida Bar No.: 0059116
Armando Nozzolillo
Florida Bar No.: 0106544
1301 Riverplace Blvd., Suite 1500
Jacksonville, Florida 32207
(904) 398-3911 (telephone)
(904) 396-0663 (facsimile)
skennelly@rtlaw.com
anozzolillo@rtlaw.com

ATTORNEYS FOR IBERIABANK

-11-

## Composite Exhibit "A"

### November 2, 2011 Promissory Note and Note

11/18/11 14:21:58 PM

# PROMISSORY NOTE

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

| Borrower: | RADNO, INC dba GOLDCOAST SALADS (TIN:<br>09-34044780)<br>3505 PLOVER AVENUE<br>NAPLES, FL 34117 | Lender: | IBERIABANK<br>Commercial Lending - Naples FL<br>2150 Goodlette Road North<br>Naples, FL 34102 |

**Principal Amount: $600,000.00**                                              **Date of Note: November 2, 2011**

PROMISE TO PAY. RADNO, INC dba GOLDCOAST SALADS ("Borrower") promises to pay to IBERIABANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Six Hundred Thousand & 00/100 Dollars ($600,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

PAYMENT. Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: 12 monthly consecutive interest payments, beginning December 2, 2011, with interest calculated on the unpaid principal balances using an interest rate of 5.500% per annum based on a year of 360 days; 59 monthly consecutive principal and interest payments of $11,481.23 each, beginning December 2, 2012, with interest calculated on the unpaid principal balances using an interest rate of 5.500% per annum based on a year of 360 days; and one principal and interest payment of $11,481.23 on November 2, 2017, with interest calculated on the unpaid principal balance using an interest rate of 5.500% per annum based on a year of 360 days. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

INTEREST CALCULATION METHOD. Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

PREPAYMENT. Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: IBERIABANK, Commercial Lending - Naples FL, 2150 Goodlette Road North, Naples, FL 34102.

LATE CHARGE. If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $25.00, whichever is greater.

INTEREST AFTER DEFAULT. Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 18.000% per annum based on a year of 360 days. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

DEFAULT. Each of the following shall constitute an event of default ("Event of Default") under this Note:

Payment Default. Borrower fails to make any payment when due under this Note.

Other Defaults. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

Default in Favor of Third Parties. Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

False Statements. Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Insolvency. The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

Change in Ownership. Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

Adverse Change. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

Insecurity. Lender in good faith believes itself insecure.

LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

AUTHORIZATION ON DRAWS. All draws require the approval of the loan officer or SVP of commercial lending.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

JURY WAIVER. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Florida.

DISHONORED ITEM FEE. Borrower will pay a fee to Lender of $15.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any

11/18/11 14:31:58 PM

Loan No: 5300220906

# PROMISSORY NOTE
## (Continued)

Page 2

and of such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by UCC Collateral.

**LINE OF CREDIT.** This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**CERTIFICATION STATEMENT.** The undersigned certifies that all statements, documents and information furnished to the Bank are correct and shall be used the Note is paid in full.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part or Borrower...

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

BORROWER:

RACHEL'S GOLDCOAST

By: _____
[signature]
"PAULINE...
the GOLDCOAST SALADS

RACHEL'S GOLDCOAST SALADS, INC dba GOLDCOAST SALADS

By: _____
[signature]
PETER F. RODIO, JR., Vice President of RODIO,
INC dba GOLDCOAST SALADS

---

**Florida Documentary Stamp Tax**

Florida documentary stamp tax required by law in the amount of $2,100.00 has been paid or will be paid directly to the Department of Revenue.

08/27/12 10:10:48 EDA

# PROMISSORY NOTE

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

| Borrower: | Lender: |
|---|---|
| RADIKO, INC., a Florida corporation (TIN: | BENHAMANE |
| 3848 FLOYES AVENUE | 2150 Goodlette Road North |
| NAPLES, FL 34117 | Naples, FL 34102 |

**Principal Amount: $1,500,000.00**    **Date of Note: August 10, 2012**

**PROMISE TO PAY.** RADIKO, INC., a Florida corporation ("Borrower") promises to pay to BENHAMANE ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Five Hundred Thousand & 00/100 Dollars ($1,500,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in accordance with the following payment schedule...

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 basis...

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment...

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $25.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 18.000%...

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

Payment Default. Borrower fails to make any payment when due under this Note.

Other Defaults. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents...

Default in Favor of Third Parties. Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement...

False Statements. Any warranty, representation or statement made or furnished to Lender by Borrower...

Insolvency. The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan...

Events Affecting Guarantor. Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

Change in Ownership. Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

Adverse Change. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

Insecurity. Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount...

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Florida.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $15.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender...

and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by , among other things, (i) those certain Commercial Security Agreements executed by Borrower in favor of Lender, dated November 2, 2011 and of even date herewith, as perfected and evidenced by those certain Financing Statements and Financing Statement Amendments filed and to be filed in the Florida Secured Transaction Registry and Public Records of Collier County, Florida; (ii) all other collateral and security described in any commercial security agreements, commercial pledge agreements, commercial guaranties, business loan agreements, assignments and other documents previously executed or now and hereafter entered into which evidence and/or secure the indebtedness evidenced by this Note in whole or in part and (iii) any and all renewals, extensions, modifications, refinancings, future advances, spreadings, amendments, restatements, consolidations, assumptions and/or substitutions of any of the foregoing.

**LINE OF CREDIT.** This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**CERTIFICATION STATEMENT.** The undersigned certifies that all statements, documents and information furnished to the Bank are correct and shall be until this Note is paid in full.

**PRIOR NOTE.** This Note renews, modifies and increases that certain Promissory Note from Borrower in favor of Lender, dated November 2, 2011, in the original principal amount of $600,000.00 (the "Original Note"). The consideration for this Note consists of (i) $600,000.00 representing the outstanding principal balance of $190,194.55 plus the $409,805.46 in principal still available for disbursement under the straight line of credit loan evidenced by the Original Note and (ii) an additional straight line of credit loan in the original principal amount of $900,000.00 (the "Increase"). The $600,000.00 in principal outstanding and/or available under the Original Note and the $900,000.00 Increase are hereby consolidated under this Note to constitute a combined indebtedness in the principal amount of $1,500,000.00. FLORIDA DOCUMENTARY STAMP TAXES IN THE AMOUNT OF $2,100.00 WERE PAID DIRECTLY TO THE FLORIDA DEPARTMENT OF REVENUE ON THE ORIGINAL NOTE. THIS NOTE IS A RENEWAL AND MODIFICATION OF THE ORIGINAL NOTE AND ALSO EVIDENCES AN INCREASE IN INDEBTEDNESS OF $900,000.00; PROVIDED, HOWEVER, SINCE THIS NOTE IS NOT SECURED BY A MORTGAGE OR OTHER LIEN RECORDED ON FLORIDA PROPERTY, FLORIDA DOCUMENTARY STAMP TAXES IN THE AMOUNT OF $350.00 WILL BE COLLECTED AND PAID DIRECTLY TO THE FLORIDA DEPARTMENT OF REVENUE. NO ADDITIONAL DOCUMENTARY STAMP TAXES ARE DUE ON THIS NOTE.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Florida (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**RADNO, INC., A FLORIDA CORPORATION**

By: ______________________________
PETER J. RADNO, SR., President of RADNO, INC., a Florida corporation

By: ______________________________
PETER P. RADNO, JR., Vice President of RADNO, INC., a Florida corporation

**Florida Documentary Stamp Tax**

Florida documentary stamp tax required by law in the amount of $350.00 has been paid or will be paid directly to the Department of Revenue.

[illegible]

13/22/13 13:20:19 RM4

**COMMERCIAL LOAN EXTENSION/MODIFICATION AGREEMENT**

Prepared By: Lisa M. Calvers
Phone/Ext No.: 239-403-6697
Date: March 4, 2013

[x] Commercial   [ ] Revolving   [ ] Consumer   [ ] Indirect   [ ] Mortgage

| Borrower Name(s) | | Account Number |
| --- | --- | --- |
| Ratino, Inc. | | 2508220946 |

| Date of Note: August 16, 2012 | Date Note to be Extended: n/a |
| --- | --- |
| Original Amount $1,500,000.00 | Number of Interests to Extend: n/a |
| Current Principal Balance of Note $1,194,586.66 | Total # of Previous Months Extended: n/a |

| Collateral: All business Assets |
| --- |

| New Maturity Date: n/a | Next Schedule Due Date: n/a |
| --- | --- |
| Rate Change: n/a Present Rate: | Effective Date: n/a New Rate: |

**Payment Schedule Changes:**   [ ] Continue Existing Payment Schedule   [x] Other

Current payment schedule is for P & I payments to start March 16, 2013. Extend Draw period and ending August 16, 2013. P & I payments will begin September 16, 2013. We're 53/4.75/4/91 and on the 16th day of each month thereafter, until maturity of February 16, 2014, when all principal, interest and any other fees, if any, will be due and payable in full.

**PLEASE PAY THIS AMOUNT** [ ] DUE DATE CHANGE ONLY(No Fee up to 20 days)

Extension Fee Amount   0.00

Reason for Modification:
To extend the interest only payments and draw period, to fully draw up the line.

We agree to the defined of regularly scheduled payment(s) or other changes in terms as listed above. Nothing in this Agreement shall constitute the satisfaction or re-payment of the amount owed under the Note, nor shall it be a novation of the amount owed under the Note. Borrower hereby promises to pay the Note in full as and when due in accordance with the terms thereof, as modified hereby, except as specifically modified by the terms or provisions of the Note, this and all terms and provisions of any and all other documents securing or evidencing the obligations under the Note, are hereby ratified and confirmed, and shall be and shall remain in full force and effect, enforceable in accordance with their terms. Borrower represents and warrants that there is no defense, offset, compensation, counterclaim or recoupment (based with respect to amounts due under, or performance of, its issuance of the Note and to the extent any and defense, offset, compensation, counterclaim or recoupment (based or other causes of action might exist, whether known or unknown, such items are hereby waived by Borrower. **THIS AGREEMENT SHALL NOT INCLUDE ANY EXTENSION OF CREDIT LIFE AND DISABILITY INSURANCE COVERAGE.**

**SIGNATURES:**

RATINO, INC., a Florida corporation

By: _____
Peter J. Ratino, Sr., President

By: _____
Peter F. Ratino, Jr., Vice President

**APPROVALS:**

_____
Brian Tierney, SVP

_____
David Gentles, SVP

_____
Spiro Ghards, Regional President

I acknowledge this agreement has been reviewed for accuracy, completeness, confirmation of information and adheres to IBERIABANK's credit policy and process procedures.

_____
Lisa M. Calvers

ACKNOWLEDGEMENT CONFIRMATION:
Commercial Loan Closing Officer

03/22/13 13:20:20 KMA

## FORBEARANCE / EXTENSION / MODIFICATION AGREEMENT

| | |
|---|---|
| | Prepared By: Lisa M. Calyare |
| | Phone/Ext No.: 239-400-4593 |
| | Date: March 4, 2013 |

| [x] Commercial | [ ] Revolving | [ ] Consumer | [ ] Indirect | [ ] Mortgage |

| | |
|---|---|
| **Borrower Name(s)** | **Account Number** |
| Radno, Inc. | 530021090d |

| | |
|---|---|
| Date of Note: August 10, 2012 | Due Date to be Extended: n/a |
| Original Amount $1,500,000.00 | Number of Months to Extend: n/a |
| Current Principal Balance of Note $1,194,506.05 | Total # of Previous Months Extended: n/a |
| Collateral: All business Assets | |

| | |
|---|---|
| New Maturity Date: n/a | Next Schedule Due Date: n/a |
| Rate Change: n/a   Present Rate: _____ New Rate: _____ | Effective Date: n/a |

**Payment Schedule Changes:**   [ ] Continue Existing Payment Schedule   [x] Other

Current payment schedule is for P & I payments to start March 10, 2013. Revised Terms period and Interest only payments for an

Additional 6 months, starting with the March 20, 2013, payment and ending August 10, 2013. P & I payments will begin September 10, 2013, flat $31,472.47, and on the 10th day of each month thereafter, until maturity of February 10, 2018, when all principal, interest and any other fees, if any, will be due and payable in full.

**PLEASE PAY THIS AMOUNT**   [ ] DUE DATE CHANGE ONLY (No Fee up to 20 days)

Extension Fee Amount   0.00

**Reason for Modification:**

To extend the interest only payments and draw period, to fully draw up the line.

_____

_____

We agree to the deferral of regularly scheduled payment(s) or other changes in terms as listed above. Nothing in this Agreement shall constitute the satisfaction or extinguishment of the amount owed under the Note, nor shall it be a novation of the amount owed under the Note. Borrower hereby promises to pay the Note to IBERIABANK in accordance with the terms thereof, as modified hereby. Except as expressly modified in the Agreement, all terms and provisions of the Note, and all terms and provisions of any and all other documents securing or evidencing the obligations under the Note, are hereby ratified and confirmed, and shall be and shall remain in full force and effect, enforceable in accordance with their terms. Borrower represents and warrants that there is no defense, offset, compensation, counterclaim or counterclaimed demand with respect to amounts due under, or performance of, the terms of the Note and to the extent any such defense, offset, compensation, counterclaim or counterclaimed demand or other cause of action might exist, whether known or unknown, such items are hereby waived by Borrower. THIS AGREEMENT SHALL NOT INCLUDE ANY EXTENSION OF CREDIT LIFE AND DISABILITY INSURANCE COVERAGE.

**SIGNATURES:**

RADNO, INC., a Florida corporation

By: _____
Peter I. Radno, Sr., as President

By: _____
Peter P. Radno, Jr., Vice President

APPROVALS:

_____
Elliah Tinney, SVP

_____
David Gordley, SVP

_____
Jimmy Glauck, Regional President

I acknowledge this agreement has been reviewed for accuracy, completeness, confirmation of information and adheres to IBERIABANK's credit policy and proven procedures.

ACKNOWLEDGEMENT CONFIRMATION:
Commercial Loan Closing Officer

_____
Lisa M Calyare

08/06/13 13:44:50 PH

*LC 08/05/13*

## FORBEARANCE / EXTENSION / MODIFICATION AGREEMENT

|  | Prepared By: | Lisa M. Calyore |
|---|---|---|
|  | Phone/Ext No.: | 239-403-6695 |
|  | Date: | July 23, 2013 |

| [x] Commercial | [ ] Revolving | [ ] Consumer | [ ] Indirect | [ ] Mortgage |

| Borrower Name(s) | Account Number |
|---|---|
| Radno, Inc. | 5308228906 |

| Date of Note: August 10, 2012 | Due Date to be Extended: n/a |
|---|---|
| Original Amount $1,380,000.00 | Number of Months to Extend: n/a |
| Current Principal Balance of Note $1,286,854.13 | Total # of Previous Months Extended: n/a |
| Collateral: All business Assets | |

| New Maturity Date: n/a | Next Schedule Due Date: n/a |
|---|---|
| Rate Change: n/a<br>Present Rate:        New Rate: | Effective Date: n/a |

Payment Schedule Changes:    [ ] Continue Existing Payment Schedule    [x] Other

Continue interest only payments to February 10, 2014.

P & I payments will begin on March 10, 2014.

PLEASE PAY THIS AMOUNT    [ ] DUE DATE CHANGE ONLY(No Fee up to 20 days)

Extension Fee Amount    0.00

Reason for Modification:
Extend the Interest Only payments for an additional 6 months.
NO FURTHER DRAWS ARE ALLOWED. LINE IS CAPPED.

We agree to the deferral of regularly scheduled payment(s) or other changes in terms as listed above.  Nothing in this Agreement shall constitute the satisfaction or extinguishment(s) of this amount owed under the Note, nor shall it be a novation of the amount owed under the Note.  Borrower hereby promises to pay the Note to IBERIABANK in accordance with the terms thereof, as modified hereby.  Except as expressly modified in the Agreement, all terms and provisions of the Note, and all terms and provisions of any and all other documents securing or evidencing the obligations under the Note, are hereby ratified and confirmed, and shall be and shall remain in full force and effect, enforceable in accordance with their terms.  Borrower represents and warrants that there is no defense, offset, compensation, counterclaim or counterclaim or setoff or reconventional demand with respect to amounts due under, or performance of, the terms of the Note and to the extent any such defense, offset, compensation, counterclaim or reconventional demand or other causes of action might exist, whether known or unknown, such items are hereby waived by Borrower.  THIS AGREEMENT SHALL NOT INCLUDE ANY EXTENSION OF CREDIT LIFE AND DISABILITY INSURANCE COVERAGE.

SIGNATURES:

RADNO, INC., a Florida corporation

By: _____
Peter I. Radno, Sr., as President

By: _____
Peter P. Radno, Jr., Vice President

APPROVALS:

_____
Brian Tinney, SVP

_____
David Gordley, EVP, Market President

I acknowledge this agreement has been reviewed for accuracy, completeness, confirmation of information and adheres to IBERIABANK's credit policy and process procedures.

ACKNOWLEDGEMENT CONFIRMATION:
Commercial Loan Closing Officer

_____
Lisa M Calyore

## Composite Exhibit "B"

### Loan Agreement

# BUSINESS LOAN AGREEMENT

[illegible]

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

| | | | |
|---|---|---|---|
| Borrower: | RADNO, INC dba GOLDCOAST SALADS (TIN: 59-3404476)<br>3565 PLOVER AVENUE<br>NAPLES, FL 34117 | Lender: | IBERIABANK<br>Commercial Lending - Naples FL<br>2150 Goodlette Road North<br>Naples, FL 34102 |

THIS BUSINESS LOAN AGREEMENT dated November 2, 2011, is made and executed between RADNO, INC dba GOLDCOAST SALADS ("Borrower") and IBERIABANK ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

TERM. This Agreement shall be effective as of November 2, 2011, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

CONDITIONS PRECEDENT TO EACH ADVANCE. Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

Loan Documents. Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) guaranties; (6) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

Borrower's Authorization. Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

Payment of Fees and Expenses. Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

Representations and Warranties. The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

No Event of Default. There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

REPRESENTATIONS AND WARRANTIES. Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

Organization. Borrower is a corporation for profit which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Florida. Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Specifically, Borrower is, and at all times shall be, duly qualified as a foreign corporation in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Borrower maintains an office at 3565 PLOVER AVENUE, NAPLES, FL 34117. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

Assumed Business Names. Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business:

| Borrower | Assumed Business Name | Filing Location | Date |
|---|---|---|---|
| RADNO, INC dba GOLDCOAST SALADS | GOLDCOAST SALADS | | 03-31-2011 |

Authorization. Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles of incorporation or organization, or bylaws, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

Financial Information. Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

Legal Effect. This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

Properties. Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

Hazardous Substances. Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

## BUSINESS LOAN AGREEMENT
### (Continued)

Litigation and Claims. No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

Taxes. To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

Lien Priority. Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

Binding Effect. This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

## AFFIRMATIVE COVENANTS. Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

Notices of Claims and Litigation. Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

Financial Records. Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

Financial Statements. Furnish Lender with the following:

Annual Statements. As soon as available, but in no event later than one-hundred-twenty (120) days after the end of each fiscal year, Borrower's balance sheet and income statement for the year ended, compiled by a certified public accountant satisfactory to Lender.

Interim Statements. As soon as available, but in no event later than 45 days after the end of each fiscal quarter, Borrower's balance sheet and profit and loss statement for the period ended, prepared by Borrower.

Tax Returns. As soon as available, but in no event later than thirty (30) days after the applicable filing date for the tax reporting period ended, Federal and other governmental tax returns, prepared by a tax professional satisfactory to Lender.

Additional Requirements.

Annual Budget. As soon as available, but in no event later than forty-five (45) days after the end of each quarter based on the companies fiscal year, Borrower's Annual Budget for the period ended, prepared by Borrower.

All financial reports required to be provided under this Agreement shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Borrower as being true and correct.

Additional Information. Furnish such additional information and statements, as Lender may request from time to time.

Financial Covenants and Ratios. Comply with the following covenants and ratios:

Minimum Income and Cash flow Requirements. Borrower shall comply with the following cash flow ratio requirements:

Debt Service Coverage Ratio. Maintain a ratio of Debt Service Coverage in excess of 1.400 to 1.000. This coverage ratio will be evaluated as of Annually.

Global Debt Service Coverage Ratio. Maintain a ratio of Global Debt Service Coverage in excess of 1.290 to 1.000. This coverage ratio will be evaluated as of Annually.

Except as provided above, all computations made to determine compliance with the requirements contained in this paragraph shall be made in accordance with generally accepted accounting principles, applied on a consistent basis, and certified by Borrower as being true and correct.

Insurance. Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

Insurance Reports. Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

Guaranties. Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantors named below, on Lender's forms, and in the amounts and under the conditions set forth in these guaranties.

| Names of Guarantors | Amounts |
|---|---|
| PETER J. RADNO, SR. | Unlimited |
| PETER P. RADNO, JR. | Unlimited |

Other Agreements. Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

Loan Proceeds. Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

Taxes, Charges and Liens. Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits. Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

Performance. Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

Operations. Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

Environmental Studies. Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

Compliance with Governmental Requirements. Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

# BUSINESS LOAN AGREEMENT
## (Continued)

Inspection. Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

Compliance Certificates. Unless waived in writing by Lender, provide Lender at least annually, with a certificate executed by Borrower's chief financial officer, or other officer or person acceptable to Lender, certifying that the representations and warranties set forth in this Agreement are true and correct as of the date of the certificate and further certifying that, as of the date of the certificate, no Event of Default exists under this Agreement.

Environmental Compliance and Reports. Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

Additional Assurances. Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

Compliance of Financial Covenant Requirement. IBERIABANK retains the right to conduct financial covenant compliance checks on a monthly basis, unless otherwise stated.

Guarantor Financial Reporting Requirements. During the term of this Agreement, Guarantor(s) shall provide Lender with all reasonably requested financial information, including but not limited to the following:

* Annual personal financial statements due every 12 months.
* Annual personal income tax returns due 30 days after filing.

LENDER'S EXPENDITURES. If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

NEGATIVE COVENANTS. Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

Indebtedness and Liens. (1) Except for trade debt incurred in the normal course of business and Indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or (3) sell with recourse any of Borrower's accounts, except to Lender.

Continuity of Operations. (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or (3) pay any dividends on Borrower's stock (other than dividends payable in its stock), provided, however that notwithstanding the foregoing, but only so long as no Event of Default has occurred and is continuing or would result from the payment of dividends, if Borrower is a "Subchapter S Corporation" (as defined in the Internal Revenue Code of 1986, as amended), Borrower may pay cash dividends on its stock to its shareholders from time to time in amounts necessary to enable the shareholders to pay income taxes and make estimated income tax payments to satisfy their liabilities under federal and state law which arise solely from their status as Shareholders of a Subchapter S Corporation because of their ownership of shares of Borrower's stock, or purchase or retire any of Borrower's outstanding shares or alter or amend Borrower's capital structure.

Loans, Acquisitions and Guaranties. (1) Loan, invest in or advance money or assets to any other person, enterprise or entity, (2) purchase, create or acquire any interest in any other enterprise or entity, or (3) incur any obligation as surety or guarantor other than in the ordinary course of business.

Agreements. Enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

CESSATION OF ADVANCES. If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender; or (E) Lender in good faith deems itself insecure, even though no Event of Default shall have occurred.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

DEFAULT. Each of the following shall constitute an Event of Default under this Agreement:

Payment Default. Borrower fails to make any payment when due under the Loan.

Other Defaults. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

Default in Favor of Third Parties. Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's or any Grantor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

False Statements. Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Insolvency. The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

Defective Collateralization. This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or

**BUSINESS LOAN AGREEMENT**
(Continued)

Loan No: 5300220988                                                                 Page 4

forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

Change in Ownership. Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

Adverse Change. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

Insecurity. Lender in good faith believes itself insecure.

EFFECT OF AN EVENT OF DEFAULT. If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

OTHER REQUIREMENTS.

* Borrower must maintain deposit relationship at IBERIABANK throughout the term of the loan.
* Loan documentation must include standard default language including reference to other lenders.
* The Borrower must receive prior written IBERIABANK approval before acquiring additional debt over $250,000.00.

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Agreement:

Amendments. This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

Attorneys' Fees; Expenses. Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

Caption Headings. Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

Consent to Loan Participation. Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

Governing Law. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Florida.

No Waiver by Lender. Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Notices. Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

Severability. If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

Subsidiaries and Affiliates of Borrower. To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates. Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

Successors and Assigns. All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

Survival of Representations and Warranties. Borrower understands and agrees that in making the Loan, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the making of the Loan and delivery to Lender of the Related Documents, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

Time is of the Essence. Time is of the essence in the performance of this Agreement.

Waive Jury. All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not

**Loan No: 8300220208**

## BUSINESS LOAN AGREEMENT
### (Continued)

Page 5

otherwise attach to this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement.

**Agreement.** The word "Agreement" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Borrower.** The word "Borrower" means RADNO, INC dba GOLDCOAST SALADS and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guaranty.** The word "Guaranty" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means BSNABANK, its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.** The word "Note" means the Note executed by RADNO, INC dba GOLDCOAST SALADS in the principal amount of $400,000.00 dated September 2, 2011, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Permitted Liens.** The words "Permitted Liens" mean (1) liens and security interests securing Indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED NOVEMBER 2, 2011.

**BORROWER:**

**RADNO, INC dba GOLDCOAST SALADS**

By: _____
PETER J. RADEX Sr., President of RADNO, INC
dba GOLDCOAST SALADS

By: _____
PETER F. RADEX, Jr., Vice President of RADNO,
INC dba GOLDCOAST SALADS

**LENDER:**

**BSNABANK**

By: _____
Authorized Signer

Laser Pro Lending, Ver. ... Copr. Harland Financial Solutions, Inc. 1997, 2011. All Rights Reserved.

# PROMISSORY NOTE

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

| Borrower: | RADNO, INC dba GOLDCOAST SALADS ITEM: | Lender: | IBERIABANK |
| | 52-3404478) | | Commercial Lending - Naples FL |
| | 3586 PLOVER AVENUE | | 2180 Goodlette Road North |
| | NAPLES, FL 34117 | | Naples, FL 34102 |

**Principal Amount: $600,000.00**          **Date of Note: November 2, 2011**

PROMISE TO PAY. RADNO, INC dba GOLDCOAST SALADS ("Borrower") promises to pay to IBERIABANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Six Hundred Thousand & 00/100 Dollars ($600,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

PAYMENT. Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balance as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: 12 monthly consecutive interest payments, beginning December 2, 2011, with interest calculated on the unpaid principal balances using an interest rate of 5.500% per annum based on a year of 360 days; 59 monthly consecutive principal and interest payments of $11,481.33 each, beginning December 2, 2012, with interest calculated on the unpaid principal balances using an interest rate of 5.500% per annum based on a year of 360 days; and one principal and interest payment of $11,481.33 on November 2, 2017, with interest calculated on the unpaid principal balances using an interest rate of 5.500% per annum based on a year of 360 days. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

INTEREST CALCULATION METHOD. Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

PREPAYMENT. Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: IBERIABANK, Commercial Lending – Naples FL, 2180 Goodlette Road North, Naples, FL 34102.

LATE CHARGE. If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $25.00, whichever is greater.

INTEREST AFTER DEFAULT. Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 18.000% per annum based on a year of 360 days. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

DEFAULT. Each of the following shall constitute an event of default ("Event of Default") under this Note:

Payment Default. Borrower fails to make any payment when due under this Note.

Other Defaults. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

Default in Favor of Third Parties. Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

False Statements. Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Insolvency. The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

Change in Ownership. Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

Adverse Change. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

Insecurity. Lender in good faith believes itself insecure.

LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

AUTHORIZATION OF DRAWS. All draws require the approval of the loan officer or SVP of commercial lending.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

JURY WAIVER. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Florida.

DISHONORED ITEM FEE. Borrower will pay a fee to Lender of $15.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any

**PROMISSORY NOTE**
**(Continued)**

Loan No: 5300220808

Page 2

and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by UCC Collateral.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**CERTIFICATION STATEMENT.** The undersigned certifies that all statements, documents and information furnished to the Bank are correct and shall be until this Note is paid in full.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in excess of the maximum rate of interest permitted by applicable law. Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. The right to accelerate maturity of sums due under this Note does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and Lender does not intend to charge or collect any unearned interest in the event of acceleration. All sums paid or agreed to be paid to Lender for the use, forbearance or detention of sums due hereunder shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of such indebtedness until payment in full so that the rate or amount of interest on account of such indebtedness does not exceed the applicable usury ceiling. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

RADICAL BOUNCE GOLDCOAST SALADS

By: _____
PETER P. RADU, JR. Vice President of RADIUS, INC.
dba GOLDCOAST SALADS

By: _____
PETER P. RADU, JR. Vice President of RADIUS, INC.
dba GOLDCOAST SALADS

Florida Documentary Stamp Tax

Florida documentary stamp tax required by law in the amount of $2,100.00 has been paid or will be paid directly to the Department of Revenue.

# BUSINESS LOAN AGREEMENT

[illegible]

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** RADNO, INC., a Florida corporation (TIN: 59-3404478) 3585 PLOVER AVENUE NAPLES, FL 34117

**Lender:** IBERIABANK Commercial Lending - Naples FL 2150 Goodlette Road North Naples, FL 34102

THIS BUSINESS LOAN AGREEMENT dated August 10, 2012, is made and executed between RADNO, INC., a Florida corporation ("Borrower") and IBERIABANK ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

TERM. This Agreement shall be effective as of August 10, 2012, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

CONDITIONS PRECEDENT TO EACH ADVANCE. Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

Loan Documents. Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) guaranties; (6) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

Borrower's Authorization. Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

Payment of Fees and Expenses. Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

Representations and Warranties. The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

No Event of Default. There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

REPRESENTATIONS AND WARRANTIES. Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

Organization. Borrower is a corporation for profit which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Florida. Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Specifically, Borrower is, and at all times shall be, duly qualified as a foreign corporation in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Borrower maintains an office at 3585 PLOVER AVENUE, NAPLES, FL 34117. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

Assumed Business Names. Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business:

| Borrower | Assumed Business Name | Filing Location | Date |
| --- | --- | --- | --- |
| RADNO, INC., a Florida corporation | GOLDCOAST SALADS | FL | 03-31-2011 |

Authorization. Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles of incorporation or organization, or bylaws, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

Financial Information. Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

Legal Effect. This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

Properties. Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

Hazardous Substances. Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

# PROMISSORY NOTE

| | |
|---|---|
| **Borrower:** RADRO, INC., a Florida corporation (TIN: 65-0490478)<br>3588 PLOVER AVENUE<br>NAPLES, FL 34177 | **Lender:** IBERIABANK<br>Commercial Lending – Naples FL<br>2150 Goodlette Road North<br>Naples, FL 34102 |

**Principal Amount: $1,500,000.00**     **Date of Note: August 10, 2012**

*References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.*

**PROMISE TO PAY.** RADRO, INC., a Florida corporation ("Borrower") promises to pay to IBERIABANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Five Hundred Thousand & 00/100 Dollars ($1,500,000.00), together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in accordance with the following payment schedule...

**PREPAYMENT.** ...

**LATE CHARGE.** ...

**INTEREST AFTER DEFAULT.** ...

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** ...

**Other Defaults.** ...

**Default in Favor of Third Parties.** ...

**False Statements.** ...

**Insolvency.** ...

**Creditor or Forfeiture Proceedings.** ...

**Events Affecting Guarantor.** ...

**Change in Ownership.** ...

**Adverse Change.** ...

**Insecurity.** ...

**LENDER'S RIGHTS.** ...

**ATTORNEYS' FEES; EXPENSES.** ...

**JURY WAIVER.** ...

**GOVERNING LAW.** ...

**DISHONORED ITEM FEE.** ...

**RIGHT OF SETOFF.** ...

**PROMISSORY NOTE**
**(Continued)**

Page 2

Loan No: 632003220906

and of such accounts.

COLLATERAL. Borrower acknowledges this Note is secured by, among other things, the following described Collateral: Commercial Security Agreement executed by Borrower in favor of Lender, dated November 2, 2011 and of even date herewith, as perfected and evidenced by financing Financing Statements and Financing Statement Amendments that are to be filed in the Florida Secured Transaction Registry and Public Records of Collier County, Florida; #3 all other collateral and security described; #3 of the commercial security agreement, commercial pledge agreement; #3 other evidence created generally; which evidence and/or secure the indebtedness evidenced by this Note in which or in part and #3 any and all renewals, extensions, modifications, rollovers, future advances, spreadings, restatements, spreadations, assumptions and/or substitutions of any of the foregoing.

LINE OF CREDIT. This Note evidences a revolving line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsement on this Note or by Lender's internal records, including daily computer print-outs.

MUTILATION STATEMENT. The undersigned verifies that at statements, documents and information furnished to the Bank are correct and shall be each of this Note.

FROM NOTE. This Note renews, modifies and increases that certain Promissory Note from Borrower in favor of Lender, dated November 2, 2011, in the original principal amount of $600,000.00 (the "Original Note"). The consideration for this Note consists of B $100,000.00 representing the outstanding principal balance of $100,198.42 plus the $400,000.00 principal still available for disbursement under the $600,000.00 line Original Note and B which at payoff current amount of credit the in this outstanding sums available under the Original Note and the $200,000.00 increase are hereby consolidated under the loan to constitute a combined outstanding in the principal amount of B $1,500,000.00. FLORIDA DOCUMENTARY STAMP TAXES WERE PAID DIRECTLY TO THE FLORIDA DEPARTMENT OF REVENUE ON THE ORIGINAL NOTE. THE AMOUNT OF $1,500.00 WERE PAID DIRECTLY TO THE ORIGINAL NOTE. THIS NOTE IS A RENEWAL AND MODIFICATION OF THE ORIGINAL NOTE, AND ALSO EVIDENCES AN INCREASE IN INDEBTEDNESS OF $600,000.00; PROVIDED, HOWEVER, SINCE THIS NOTE IS NOT SECURED BY A MORTGAGE ON OR OTHER LIEN RECORDED ON REAL PROPERTY, NO FLORIDA INTANGIBLE TAX OF $300.00 WAS COLLECTED AND PAID DIRECTLY TO THE FLORIDA DEPARTMENT OF REVENUE. NO ADDITIONAL DOCUMENTARY STAMP TAXES ARE DUE ON THIS NOTE.

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

GENERAL PROVISIONS. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would exceed the maximum rate of interest permitted under applicable law. Any such amount interest or interest inadvertently charged or collected by federal law or the law of the State of Florida (as applicable). Any such amounts interest or inadvertently charged, received or demanded, be applied as a reduction of the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

RADIO TOWER FLORIDA ACQUISITION
INC., a Florida corporation

By: _____
[signature]
Florida corporation

By: _____
[signature]
INC., a Florida corporation

By: _____
[signature]
Vice President of RADIO
TOWER FLORIDA ACQUISITION,
INC., a Florida corporation

---

Florida Documentary Stamp Tax

Florida documentary stamp tax is required by law in the amount of $350.00 has been paid or will be paid directly to the Department of Revenue.

# BUSINESS LOAN AGREEMENT

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** RADNO, INC., a Florida corporation (TIN)
83-3404-8783
3868 FLOVER AVENUE
NAPLES, FL 34177

**Lender:** BRANCHBANK
Commercial Lending - Naples FL
21240 Bandless Road North
Naples, FL 34102

THIS BUSINESS LOAN AGREEMENT dated August 19, 2012, is made and executed between RADNO, INC. ("Borrower") and BRANCHBANK ("Lender") on the following terms and conditions...

**LEGAL EFFECT.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement...

| Borrower | | | |
|---|---|---|---|
| RADNO, INC., a Florida corporation | | | |
| By: GOLDCOAST SALADS | | | |

| | Assumed Business Name | FEIN Location | Date |
|---|---|---|---|
| | | FL | 08-31-2011 |

**BUSINESS LOAN AGREEMENT**
**(Continued)**

Litigation and Claims. No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

Taxes. To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

Lien Priority. Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security interests and rights in and to such Collateral.

Binding Effect. This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

Prior Loan Agreements. This Loan Agreement supersedes all prior Loan Agreements (whether titled Business Loan Agreement, or some other name) between Lender and Borrower except for those Agreements specific to the establishment of a line of credit governed by a Borrowing Base.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

Notices of Claims and Litigation. Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

Financial Records. Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

Financial Statements. Furnish Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

Additional Information. Furnish such additional information and statements, as Lender may request from time to time.

~~Financial Covenants and Ratios.~~ ~~Comply with the following covenants and ratios:~~

~~Minimum Income and Cash flow Requirements~~ ᵇᵗ

Except as provided above, all computations made to determine compliance with the requirements contained in this paragraph shall be made in accordance with ~~generally accepted accounting principles,~~ applied on a consistent basis, and certified by Borrower as being ~~true and correct.~~

Insurance. Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

Insurance Reports. Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

Guaranties. Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantors named below, on Lender's forms, and in the amounts and under the conditions set forth in those guaranties.

| Names of Guarantors | Amounts |
|---|---|
| PETER J. RADMO, SR. | Unlimited |
| PETER P. RADMO, JR. | Unlimited |

Other Agreements. Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other agreements.

Loan Proceeds. Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

Taxes, Charges and Liens. Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits. Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

Performance. Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

Operations. Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

Environmental Studies. Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substances, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

Compliance with Governmental Requirements. Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

Inspection. Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

Compliance Certificates. Unless waived in writing by Lender, provide Lender at least annually, with a certificate executed by Borrower's chief financial officer, or other officer or person acceptable to Lender, certifying that the representations and warranties set forth in this Agreement are true and correct as of the date of the certificate and further certifying that, as of the date of the certificate, no Event of Default exists under this Agreement.

Environmental Compliance and Reports. Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental

activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**Compliance of Financial Covenant Requirement.** Lender retains the right to conduct financial covenant compliance checks as a monthly basis, unless otherwise stated.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Indebtedness and Liens.** (1) Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or (3) sell with recourse any of Borrower's accounts, except to Lender.

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or (3) pay any dividends on Borrower's stock (other than dividends payable in its stock), provided, however that notwithstanding the foregoing, but only so long as no Event of Default has occurred and is continuing or would result from the payment of dividends, if Borrower is a "Subchapter S Corporation" (as defined in the Internal Revenue Code of 1986, as amended), Borrower may pay cash dividends on its stock to its shareholders from time to time in amounts necessary to enable the shareholders to pay income taxes and make estimated income tax payments to satisfy their liabilities under federal and state law which arise solely from their status as Shareholders of a Subchapter S Corporation because of their ownership of shares of Borrower's stock, or purchase or retire any of Borrower's outstanding shares or alter or amend Borrower's capital structure.

**Loans, Acquisitions and Guaranties.** (1) Loan, invest in or advance money or assets to any other person, enterprise or entity, (2) purchase, create or acquire any interest in any other enterprise or entity, or (3) incur any obligation as surety or guarantor other than in the ordinary course of business.

**Agreements.** Enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender; or (E) Lender in good faith deems itself insecure, even though no Event of Default shall have occurred.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's or any Grantor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any

**BUSINESS LOAN AGREEMENT**
**(Continued)**

Loan No: 530000820806

Page 4

# BUSINESS LOAN AGREEMENT
## (Continued)

Loan No: 6300220906                                                                                    Page 5

absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Florida.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Subsidiaries and Affiliates of Borrower.** To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates. Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in making the Loan, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the making of the Loan and delivery to Lender of the Related Documents, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement.

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.** The word "Borrower" means RADNO, INC., a Florida corporation and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means IBERIABANK, its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**BUSINESS LOAN AGREEMENT**
**(Continued)**

Loan No: 5300220906                                                    Page 6

Note. The word "Note" means the Note executed by RADNO, INC., a Florida corporation in the principal amount of $1,500,000.00 dated August 10, 2012, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

Permitted Liens. The words "Permitted Liens" mean (1) liens and security interests securing indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

Security Agreement. The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

Security Interest. The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED AUGUST 10, 2012.

**BORROWER:**

RADNO INC., A FLORIDA CORPORATION

By:
PETER J. RADNO, SR., President of RADNO, INC., a
Florida corporation

By:
PETER F. RADNO, JR., Vice President of RADNO,
INC., a Florida corporation

**LENDER:**

IBERIABANK

By:
Authorized Signer

BRIAN TINNEY  SVP Commercial

LaserPro Lending, Ver. 5.59.00.003   Copr. Harland Financial Solutions, Inc. 1997, 2012.   All Rights Reserved.   - FL   s:\CFI\LPL\C40.FC   TR-25767   PR-5

Composite Exhibit "C"

Security Agreement

Case 8:14-cv-01316-EAK-TBM   Document 2   Filed 06/03/14   Page 39 of 94 PageID 155

11/18/11 14:35:44 PN

# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | 11-02-2017 | 5400221000B | | | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

| Grantor: | RADNO, INC dba GOLDCOAST SALADS (TIN: 59-3404478) 3656 FLOVER AVENUE NAPLES, FL 34117 | Lender: | IBERIABANK Commercial Lending – Naples FL 3180 Goodlette Road North Naples, FL 34102 |
|---|---|---|---|

THIS COMMERCIAL SECURITY AGREEMENT dated November 2, 2011, is made and executed between RADNO, INC dba GOLDCOAST SALADS ("Grantor") and IBERIABANK ("Lender").

GRANT OF SECURITY INTEREST. For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

COLLATERAL DESCRIPTION. The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

1st security interest in equipment to be purchased, more particularly described as three major equipment items, a Commercial Generator, Commercial racking, and Commercial Compressor/Dryer

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from any sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

FUTURE ADVANCES. In addition to the Note, this Agreement secures all future advances made by Lender to Grantor regardless of whether the advances are made as plumant to a commitment or if for the same purposes.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL. With respect to the Collateral, Grantor represents and promises to Lender that:

Perfection of Security Interest. Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.

Notices to Lender. Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

No Violation. The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

Enforceability of Collateral. To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

Location of the Collateral. Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

Removal of the Collateral. Except in the ordinary course of Grantor's business, including the sale of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

Transactions Involving Collateral. Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

Title. Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

Repairs and Maintenance. Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

Inspection of Collateral. Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

Taxes, Assessments and Liens. Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, reasonable attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within the (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs.* Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Any guarantor or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of guarantor's or Grantor's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

11/18/11  14:35:47 PN

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Loan No: 5300220906

Page 3

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Florida Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** In the event of a suit being instituted to foreclose this Agreement, Lender shall be entitled to apply at any time pending such foreclosure suit to the court having jurisdiction thereof for the appointment of a receiver of any or all of the Collateral, and of all rents, incomes, profits, issues and revenues thereof, from whatsoever source. The parties agree that the court shall forthwith appoint such receiver with the usual powers and duties of receivers in like cases. Such appointment shall be made by the court as a matter of strict right to Lender and without notice to Grantor, and without reference to the adequacy or inadequacy of the value of the Collateral, or to the solvency or insolvency of Grantor or any other party defendant to such suit. Grantor hereby specifically waives the right to object to the appointment of a receiver and agrees that such appointment shall be made as an admitted equity and as a matter of absolute right to Lender, and consents to the appointment of any officer or employee of Lender as receiver. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Florida.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future

11/18/11  14:35:47 PM

Loan No: 5200220906

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Page 4

transaction. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means GOLDCOAST SALADS and includes all co-signers and co-makers signing the Note.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means GOLDCOAST SALADS.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum, including crude oil and any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision of this Agreement, together with all interest thereon.

**Lender.** The word "Lender" means BUENA/BANK, its successors and assigns.

**Note.** The word "Note" means the loan agreement dated November 2, 2011, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED NOVEMBER 2, 2011.

GRANTOR:

By: _____
PETER P. RADNO SR., President of RADNO, INC.
dba GOLDCOAST SALADS

By: _____
PETER P. RADNO, JR., Vice President of RADNO,
INC dba GOLDCOAST SALADS

08/27/12 10:17:11 XMA

# COMMERCIAL SECURITY AGREEMENT

| | | | | | | | |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Grantor: | RADNO, INC., a Florida corporation (TIN:<br>59-3404478)<br>3845 PLOVER AVENUE<br>NAPLES, FL 34117 | | Lender: | BERKABANK<br>Commercial Lending – Naples FL<br>2160 Goodlette Road North<br>Naples, FL 34102 |
|---|---|---|---|---|

THIS COMMERCIAL SECURITY AGREEMENT dated August 10, 2012, is made and executed between RADNO, INC., a Florida corporation ("Grantor") and BERKABANK ("Lender").

GRANT OF SECURITY INTEREST. For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

COLLATERAL DESCRIPTION. The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

The Collateral covered hereby is any and all of the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, whether now or hereafter subject to any rights in the following described property, and wherever located:

(i) a purchase money security interest in equipment and fixtures to be purchased and more particularly described from time to time by amendments, addendums and/or attachments hereto;

(ii) all equipment, fixtures and other property described on Exhibit "A" attached hereto and made a part hereof;

(iii) all assets and property, including, without limitation, all goods, inventory, equipment, fixtures, accounts, chattel paper, instruments, promissory notes, commercial tort claims, deposit accounts, investment property, letter of credit rights, documents and general intangibles (including, but not limited to, all software and all payment intangibles);

(iv) all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to any and all of the foregoing property;

(v) all additions, replacements of and substitutions for all or any part of the foregoing property;

(vi) all good will relating to any and all of the foregoing property;

(vii) all records and data and embodied software relating to any and all of the foregoing property, including all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media;

(viii) all supporting obligations relating to any and all the foregoing property; and

(ix) all proceeds (including, but not limited to, all insurance payments) of or relating to any and all of the foregoing property

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and proceeds of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other processes.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

FUTURE ADVANCES. In addition to the Note, this Agreement secures all future advances made by Lender to Grantor regardless of whether the advances are made a) pursuant to a commitment or b) for the same purposes.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL. With respect to the Collateral, Grantor represents and promises to Lender that:

Perfection of Security Interest. Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.

Notices to Lender. Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

No Violation. The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

Enforceability of Collateral. To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

Location of the Collateral. Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

Removal of the Collateral. Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

Transactions Involving Collateral. Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall

03/27/12 10:17:11 KMA

## COMMERCIAL SECURITY AGREEMENT
**Loan No: 5300220906**
(Continued)

Page 2

Immediately deliver any such proceeds to Lender.

Title. Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

Repairs and Maintenance. Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

Inspection of Collateral. Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

Taxes, Assessments and Liens. Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, reasonable attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

Compliance with Governmental Requirements. Grantor shall comply promptly with all laws, ordinances, rules, and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

Hazardous Substances. Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the indebtedness and the satisfaction of this Agreement.

Maintenance of Casualty Insurance. Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

Application of Insurance Proceeds. Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the indebtedness.

Insurance Reserves. Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

Insurance Reports. Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

Financing Statements. Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon

08/27/'12 10:17:12 EDA

Loan No: 8300220608

**COMMERCIAL SECURITY AGREEMENT**
(Continued)

Page 3

**Default.**

DEFAULT. Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** ...

**Default in Favor of Third Parties.** ...

**False Statements.** ...

**Defective Collateralization.** ...

**Insolvency.** ...

**Creditor or Forfeiture Proceedings.** ...

**Events Affecting Guarantor.** ...

**Adverse Change.** ...

**Insecurity.** ...

**Cure Provisions.** ...

RIGHTS AND REMEDIES ON DEFAULT. ...

**Accelerate Indebtedness.** ...

**Assemble Collateral.** ...

**Sell the Collateral.** ...

**Appoint Receiver.** ...

**Collect Revenues, Apply Accounts.** ...

**Obtain Deficiency.** ...

**Other Rights and Remedies.** ...

**Election of Remedies.** ...

MISCELLANEOUS PROVISIONS. ...

**Amendments.** ...

**Attorneys' Fees; Expenses.** ...

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

legal expenses, for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Florida.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means RADNO, INC., a Florida corporation and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Event of Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means RADNO, INC., a Florida corporation.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision of this Agreement, together with all interest thereon.

**Lender.** The word "Lender" means REPUBLIC, its successors and assigns.

**Note.** The word "Note" means the Note executed by RADNO, INC., a Florida corporation in the principal amount of $1,500,000.00 dated August 10, 2012, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

08/27/12 10:17:15 RMA

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Loan No: 5300220806                                                          Page 5

GRANTOR:

RADNO, INC., A FLORIDA CORPORATION

By: _____        By: _____
PETER J. RADNO, SR., President of RADNO, INC., a        PETER P. RADNO, JR., Vice President of RADNO,
Florida corporation                                      INC., a Florida corporation

Please
note: The Exhibit
"A" Attached to
The Security agreement
+ UCC's is Not New
Collateral - It is existing
Collateral that we have
filed amendments to our
existing UCC filed -
We are restating our
exhibit & future ones with
this list to purchase
New equipment in the new
future which amendments
will be filed.

## Composite Exhibit "D"

### Financing Statements

07/27/12· 16:31:55 CR

| STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT AMENDMENT FORM | FLORIDA SECURED TRANSACTION REGISTRY |
|---|---|
| A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON<br>Lisa M Calyore | **FILED**<br>2012 Mar 26 08:40 AM |
| B. SEND ACKNOWLEDGEMENT TO:<br>Name  Iberiabank<br>Address  2150 Goodlette Road N<br>Address<br>City/State/Zip  Naples, FL  34102 · | ****** 201206423070 ****** |
| | THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY |

| 1a. INITIAL FINANCING STATEMENT FILE #<br>201105640829 | 1b. ☐ | This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. · |
|---|---|---|

**2. CURRENT RECORD INFORMATION – DEBTOR NAME – INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

| 2a. ORGANIZATION'S NAME<br>Radno, Inc. dba Goldcoast Salads | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**3. CURRENT RECORD INFORMATION – SECURED PARTY NAME – INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

| 3a. ORGANIZATION'S NAME<br>Iberiabank | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S LAST NAME . | FIRST NAME | MIDDLE NAME | SUFFIX |

| 4. ☐ | TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement. |
|---|---|

| 5. ☐ | CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law. |
|---|---|

| 6. ☐ | ASSIGNMENT (full or partial): Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11. |
|---|---|

| 7. ☐ | AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes. |
|---|---|

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.

☐ CHANGE name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.   ☐ DELETE name: Give record name to be deleted in item 8a or 8b.   ☐ ADD name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

**8. CURRENT RECORD INFORMATION – INSERT ONLY ONE NAME (8a OR 8b) – Do Not Abbreviate or Combine Names**

| 8a. ORGANIZATION'S NAME<br>IberiaBank | | | |
|---|---|---|---|
| 8b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**9. CHANGED (NEW) OR ADDED INFORMATION: – INSERT ONLY ONE NAME (9a OR 9b) – Do Not Abbreviate or Combine Names**

| 9a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 9c. MAILING ADDRESS Line One | | This space not available. | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
| 9d. TAX ID# | REQUIRED ADD'L INFO RE ORGANIZATION DEBTOR | 9.e TYPE OF ORGANIZATION | 9.f JURISDICTION OF ORGANIZATION | 9.g ORGANIZATIONAL ID# NONE |

**10. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☑ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

Purchased 2 CHICAGO PNEUMATIC COMPRESS ROTARY item #CPE100-CP, Rotary Screw Direct Dirve 100 hp., TEFC Motor 460/3/60 Voltage TEFC, Wye-Delta, Reduced Voltage Start, 125 psi., 455 cfm 65 dba sound level, Computer Controlled, 1 YEAR PACKAGE 5 YEAR LIMITED DRIVETRAIN WARRANTY, together all accessions, additons, replacements and substitutions relating to the foregoing.

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 11a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 11b. INDIVIDUALS' LAST NAME | FIRST NAME . | MIDDLE NAME | SUFFIX |

**12. OPTIONAL FILER REFERENCE DATA**

| STANDARD FORM - FORM UCC-3 (REV.01/2003) | Filing Office Copy | Approved by the Secretary of State, State of Florida |
|---|---|---|

07/27/12 16:31:52 CR

| STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT AMENDMENT FORM | FLORIDA SECURED TRANSACTION REGISTRY |
|---|---|
| A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON<br>Lisa M Calyore | **FILED**<br>2012 Jul 09 08:00 AM |
| B. SEND ACKNOWLEDGEMENT TO:<br>Name   Iberiabank<br>Address  2150 Goodlette Road N<br>Address<br>City/State/Zip  Naples, FL  34102 | ****** 201207097339 ******<br><br>THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY |

| 1a. INITIAL FINANCING STATEMENT FILE #<br>201105640829 | | 1b. | This FINANCING STATEMENT AMENDMENT is to be filed [for record] [or recorded] in the REAL ESTATE RECORDS. |
|---|---|---|---|

2. CURRENT RECORD INFORMATION – DEBTOR NAME – INSERT ONLY ONE DEBTOR NAME (2a OR 2b)

| 2a. ORGANIZATION'S NAME<br>Radno, Inc. dba Goldcoast Salads | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

3. CURRENT RECORD INFORMATION – SECURED PARTY (NAME – INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME<br>Iberiabank | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 4. ☐ | TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement. |
|---|---|
| 5. ☐ | CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law. |
| 6. ☐ | ASSIGNMENT (full or partial): Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11. |
| 7. ☐ | AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes. |

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.
☐ CHANGE name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.   ☐ DELETE name: Give record name to be deleted in item 8a or 8b.   ☐ ADD name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

8. CURRENT RECORD INFORMATION – INSERT ONLY ONE NAME (8a OR 8b) – Do Not Abbreviate or Combine Names

| 8a. ORGANIZATION'S NAME<br>IberiaBank | | | |
|---|---|---|---|
| 8b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

9. CHANGED (NEW) OR ADDED INFORMATION: – INSERT ONLY ONE NAME (9a OR 9b) – Do Not Abbreviate or Combine Names

| 9a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 9c. MAILING ADDRESS Line One | | This space not available. | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
| 9d. TAX ID# | REQUIRES ADD'L INFO RE: ORGANIZATION DEBTOR | 9e. TYPE OF ORGANIZATION | 9f. JURISDICTION OF ORGANIZATION | 9g. ORGANIZATIONAL ID# NONE |

10. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☑ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

Purchase from Corey Compressor, Inc., 1 Corey Compressor, Item #4002CCi, with any and all connections and bypass valving for all filters and dryer, with an Air Pipe System, Item 70MMSPEEDBLUE, as per Invoice #13943, dated May 21, 2012, together all accessions, additions, replacements and substitutions relating to the foregoing.

11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 11a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

12. OPTIONAL FILER REFERENCE DATA

| STANDARD FORM - FORM UCC-3 (REV.01/2009) | Filing Office Copy | Approved by the Secretary of State, State of Florida |
|---|---|---|

07/27/12 16:31:46 CR

| STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT AMENDMENT FORM | FLORIDA SECURED TRANSACTION REGISTRY |
|---|---|
| A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON<br>Lisa M Calyore | **FILED**<br>2012 Jul 17 08:00 AM |
| B. SEND ACKNOWLEDGEMENT TO:<br>Name  Iberiabank | ****** 201207145619 ****** |
| Address  2150 Goodlette Road N | |
| Address | |
| City/State/Zip  Naples, FL 34102 | THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY |

| 1a. INITIAL FINANCING STATEMENT FILE #<br>201105640629 | 1b. | This FINANCING STATEMENT AMENDMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS. |
|---|---|---|

2. CURRENT RECORD INFORMATION – DEBTOR NAME – INSERT ONLY ONE DEBTOR NAME (2a OR 2b)

| 2a. ORGANIZATION'S NAME<br>Radno, Inc. dba Goldcoast Salads | | | |
|---|---|---|---|
| **2b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |

3. CURRENT RECORD INFORMATION – SECURED-PARTY NAME – INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME<br>Iberiabank | | | |
|---|---|---|---|
| **3b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |

| 4. ☐ | TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement. |
|---|---|

| 5. ☐ | CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law. |
|---|---|

| 6. ☐ | ASSIGNMENT (full or partial): Give name of assignee in item 9a or 9b and address of assignee in item 9c and also give name of assignor in item 11. |
|---|---|

| 7. ☐ | AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes. |
|---|---|

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.

☐ CHANGE name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.   ☐ DELETE name: Give record name to be deleted in item 8a or 8b.   ☐ ADD name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

8. CURRENT RECORD INFORMATION – INSERT ONLY ONE NAME (8a OR 8b) – Do Not Abbreviate or Combine Names

| 8a. ORGANIZATION'S NAME<br>IberiaBank | | | |
|---|---|---|---|
| **8b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |

9. CHANGED (NEW) OR ADDED INFORMATION: – INSERT ONLY ONE NAME (9a OR 9b) – Do Not Abbreviate or Combine Names

| 9a ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **9b INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | | **SUFFIX** |
| 9c MAILING ADDRESS Line One | | This space not available. | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
| 9d TAX ID# | REQUIRED ADD'L INFO RE ORGANIZATION DEBTOR | 9.e TYPE OF ORGANIZATION | 9.f JURISDICTION OF ORGANIZATION | 9.g ORGANIZATIONAL ID#  NONE |

10. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☑ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

Purchased equipment, a description attached hereto and made a part hereof as Exhibit "A", together with all accessions, additions, replacements and substitutions relating to the foregoing, from Corey Compressor, Inc., as per Invoice #14574.

11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 11a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **11b. INDIVIDUALS' LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |

12. OPTIONAL FILER REFERENCE DATA

STANDARD FORM - FORM UCC-3 (REV.01/2009)          Filing Office Copy          Approved by the Secretary of State, State of Florida

09/05/12 17:41:22 PN

| STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT AMENDMENT FORM | FLORIDA SECURED TRANSACTION REGISTRY |
|---|---|
| A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON | **FILED** |
| Lisa M Calyore | 2012 Aug 16 AM 08:00 |
| B. SEND ACKNOWLEDGEMENT TO: Name **IBERIABANK** | **** 201207342783 **** |
| Address 2150 Goodlette Road N | ***C * 08161240802501-24.00***24.00*** |
| Address | |
| City/State/Zip Naples, FL 34102 | THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY |

| 1a. INITIAL FINANCING STATEMENT FILE # 201105640625 | 1b. | This FINANCING STATEMENT AMENDMENT is to be filed [for record] [or recorded] in the REAL ESTATE RECORDS. |
|---|---|---|

2. CURRENT RECORD INFORMATION -- DEBTOR NAME – INSERT ONLY ONE DEBTOR NAME (2a OR 2b)

| 2a. ORGANIZATION'S NAME Radno, Inc. dba Goldcoast Salads | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

3. CURRENT RECORD INFORMATION -- SECURED PARTY NAME – INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME IBERIABANK | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

4. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

5. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

6. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 9a or 9b and address of assignee in item 9c and also give name of assignor in item 11.

7. ☐ AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 3 and/or 9.
☐ CHANGE name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.  ☐ DELETE name: Give record name to be deleted in item 8a or 8b.  ☐ ADD name: Complete item 9a or 9b, and also complete items 9d-9g (if applicable).

8. CURRENT RECORD INFORMATION – INSERT ONLY ONE NAME (8a OR 8b) – Do Not Abbreviate or Combine Names

| 8a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 8b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

9. CHANGED (NEW) OR ADDED INFORMATION: – INSERT ONLY ONE NAME (9a OR 9b) – Do Not Abbreviate or Combine Names

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 9c. MAILING ADDRESS Line One | | This space not available | | |
|---|---|---|---|---|
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

| 9d. TAX ID# | REQUIRED ADD'L INFO RE ORGANIZATION DEBTOR | 9e. TYPE OF ORGANIZATION | 9f. JURISDICTION OF ORGANIZATION | 9g. ORGANIZATIONAL ID# NONE |
|---|---|---|---|---|

10. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☑ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

The property, rights, interest and other collateral set forth in Schedule "1", attached hereto and made a part hereof.

11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☑ and enter name of DEBTOR authorizing this Amendment.

| 11a. ORGANIZATION'S NAME Radno, Inc. dba Goldcoast Salads | | | |
|---|---|---|---|
| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

12. OPTIONAL FILER REFERENCE DATA

STANDARD FORM - FORM UCC-3 (REV.01/2009)          Filing Office Copy          Approved by the Secretary of State, State of Florida

10/11/12 12:19:02 KMA

FLORIDA SECURED TRANSACTION REGISTRY

STATE OF FLORIDA UNIFORM COMMERCIAL CODE
FINANCING STATEMENT AMENDMENT FORM

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON
Jennifer Goss

B. SEND ACKNOWLEDGEMENT TO:
Name   Iberiabank

Address  2150 Goodlette Road N

Address

City/State/Zip  Naples, FL 34102

**FILED**
2012 Sep 26 AM 08:00
**** 20120758647X ****
***C * 09261242020401-24.00***24.00***

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
201106540629

1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] [or recorded] in the REAL ESTATE RECORDS.

2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)

2a. ORGANIZATION'S NAME
Radno, Inc. dba Goldcoast Salads

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

3. CURRENT RECORD INFORMATION – SECURED PARTY NAME – INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

3a. ORGANIZATION'S NAME
Iberiabank

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

4. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

5. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

6. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 9a or 9b and address of assignee in Item 9c; and also give name of assignor in Item 11.

7. ☐ AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.
☐ CHANGE name and/or address-Give current record name in item 8a or 8b, Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.
☐ DELETE name-Give record name to be deleted in item 8a or 8b.
☐ ADD name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

8. CURRENT RECORD INFORMATION- INSERT ONLY ONE NAME (8a OR 8b) – Do Not Abbreviate or Combine Names

8a. ORGANIZATION'S NAME
IberiaBank

| 8b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

9. CHANGED (NEW) OR ADDED INFORMATION: - INSERT ONLY ONE NAME (9a OR 9b) – Do Not Abbreviate or Combine Names

9a. ORGANIZATION'S NAME

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 9c. MAILING ADDRESS Line One | | This space not available. | | |
|---|---|---|---|---|
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

| 9d. TAX ID# | REQUIRED ADD'L INFO RE ORGANIZATION DEBTOR | 9e. TYPE OF ORGANIZATION | 9f. JURISDICTION OF ORGANIZATION | 9g. ORGANIZATIONAL ID# NONE |
|---|---|---|---|---|

10. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☑ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

All Commercial Racking, including but not limited to Dry Storage, Freezer and Cooler, as per Invoice #30287868 & 30284536 made a part hereof as Exhibit "A", together with all accessions, additions, replacements and substitutions relating to the foregoing.

11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

11a. ORGANIZATION'S NAME

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME. | SUFFIX |
|---|---|---|---|

12. OPTIONAL FILER REFERENCE DATA

STANDARD FORM - FORM UCC-3 (REV.01/2009)    Filing Office Copy    Approved by the Secretary of State, State of Florida

10/24/12 09:24:26 am

## STATE OF FLORIDA UNIFORM COMMERCIAL CODE
### FINANCING STATEMENT AMENDMENT FORM

FLORIDA SECURED TRANSACTION REGISTRY

**FILED**
2012 Oct 15 AM 08:00
**\*\*\*\*** 20120176398006 **\*\*\*\***
**\*\*C \* 1015124591801.33.40\*\*\$3.00\*\*\*\***

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON
Jennifer Goss

B. SEND ACKNOWLEDGEMENT TO:
Name: DeniaBank

Address: 2150 Goodlette Road N
Address:

City/State/Zip: Naples, FL 34102

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
20110088029

1b. □ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. □ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. □ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. □ ASSIGNMENT (full or partial): Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects □ Debtor or □ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
□ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c. □ DELETE name: Give record name to be deleted in item 6a or 6b. □ ADD name: Complete item 7a or 7b, and 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:
6a. ORGANIZATION'S NAME
DeniaBank
6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

7. CHANGED (NEW) OR ADDED INFORMATION:
7a. ORGANIZATION'S NAME

| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| 7c. MAILING ADDRESS Line One | CITY | | | | STATE | POSTAL CODE | COUNTRY |
| MAILING ADDRESS Line Two | | Take space not applicable | | | | |

7d. TAX ID# | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID# □ NONE

8. ☒ AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral □ deleted or ☒ added, or give entire □ restated collateral description, or describe collateral □ assigned.
Purchase from Terranet Sales, 1 MTV Secobem, Serial #173-1095482A, as per Invoice #0111154006, dated August 13, 2012 / Purchase from United Rentals, 1 JLG 3246 ES Scissor Lift, Serial# 0200121570S, as per Invoice #10571181-001, dated September 19, 2012 / Purchase from Galloway Technology, LLC, Computer Equipment including and attributed to 33 Desktop Computers, Server, Software & Licensing, as further described in the attached Exhibit "A", together all accessories, auctions, replacements and substitutions relating to the foregoing.

11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here □ and enter name of DEBTOR authorizing this Amendment.
11a. ORGANIZATION'S NAME

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

12. OPTIONAL FILER REFERENCE DATA

STANDARD FORM - FORM UCC-3 (REV 01/2009)    Filing Office Copy    Approved by the Secretary of State, State of Florida

**STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT FORM**

A. NAME & DAYTIME PHONE OF CONTACT PERSON

B. SEND ACKNOWLEDGMENT TO:

Name        **IBERIABANK**

Address     **1101 EAST ADMIRAL DOYLE DR., LOAN OPERATIONS**

Address     **PO BOX 12440**

City/State/Zip    **NEW IBERIA, LA 70562-2440**

FLORIDA SECURED TRANSACTION REGISTRY

# FILED

2011 Nov 10 08:00 AM

****** 201105640629 ******

---

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

1a. ORGANIZATION'S NAME
RADNO, INC dba GOLDCOAST SALADS

| 1b. INDIVIDUAL'S LAST NAME | | | FIRST NAME | | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|---|---|
| 1c. MAILING ADDRESS Line One 3565 PLOVER AVENUE | | | | | | | |
| MAILING ADDRESS Line Two | | | CITY NAPLES | | STATE FL | POSTAL CODE 34117 | COUNTRY USA |

| 1d. TAX ID# 59-3404478 | REQUIRED ADD'L INFO RE: ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Corporation | 1f. JURISDICTION OF ORGANIZATION FL | 1g. ORGANIZATIONAL ID#, ☒ NONE |
|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

2a. ORGANIZATION'S NAME

| 2b. INDIVIDUAL'S LAST NAME | | | FIRST NAME | | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|---|---|
| 2c. MAILING ADDRESS Line One | | | | | | | |
| MAILING ADDRESS Line Two | | | CITY | | STATE | POSTAL CODE | COUNTRY |

| 2d. TAX ID# | REQUIRED ADD'L INFO RE: ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, ☐ NONE |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P)- INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

3a. ORGANIZATION'S NAME
IBERIABANK

| 3b. INDIVIDUAL'S LAST NAME | | | FIRST NAME | | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|---|---|
| 3c. MAILING ADDRESS Line One 2180 Goodlette Road North | | | | | | | |
| MAILING ADDRESS Line Two | | | CITY Naples | | STATE FL | POSTAL CODE 34102 | COUNTRY |

**4. This FINANCING STATEMENT covers the following collateral:**
1st security interest in equipment to be purchased, more particularly described as three major equipment items, a Commercial Generator, Commercial racking, and Commercial Compressor/Dryer; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing.

**5. ALTERNATE DESIGNATION** (if applicable)  ☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR
                                            ☐ AG. LIEN  ☐ NON-UCC FILING  ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK EXACTLY ONE BOX
☒ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.
☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-1 (REV.01/2009)        Filing Office Copy        Approved by the Secretary of State, State of Florida

01/15/13 16:19:42 LLR

FLORIDA SECURED TRANSACTION REGISTRY

**FILED**

**2012 Dec 24 AM 08:00**

**** 201208085725 ****

***C # 32241244439301-18.00***18.00***

## STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT AMENDMENT FORM

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON
Lisa M Calyore

B. SEND ACKNOWLEDGEMENT TO:
Name  IberiaBank

Address 2150 Goodlette Road N

Address

City/State/Zip Naples, FL 34102

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #.
20110554025

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS.

2. CURRENT RECORD INFORMATION -- DEBTOR NAME -- INSERT ONLY ONE DEBTOR NAME (2a OR 2b)

2a. ORGANIZATION'S NAME
Radno, Inc. dba Goldcoast Salads

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

3. CURRENT RECORD INFORMATION -- SECURED PARTY NAME -- INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

3a. ORGANIZATION'S NAME
IberiaBank

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

4. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

5. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

6. ☐ ASSIGNMENT (full or partial): Give name of assignee, in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

7. ☐ AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.
☐ CHANGE name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.   ☐ DELETE name: Give record name to be deleted in item 8a or 8b.   ☐ ADD name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

8. CURRENT RECORD INFORMATION -- INSERT ONLY ONE NAME (8a OR 8b) -- Do Not Abbreviate or Combine Names

8a. ORGANIZATION'S NAME
IberiaBank

| 8b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

9. CHANGED (NEW) OR ADDED INFORMATION: -- INSERT ONLY ONE NAME (9a OR 9b) -- Do Not Abbreviate or Combine Names

9a. ORGANIZATION'S NAME

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 9c. MAILING ADDRESS Line One | | This space not available. | | | |
|---|---|---|---|---|---|
| MAILING ADDRESS Line Two | CITY | | STATE | POSTAL CODE | COUNTRY |

| 9d. TAX ID# | SECURED ADD'L INFO. RE ORGANIZATION DEBTOR | 9e. TYPE OF ORGANIZATION | 9f. JURISDICTION OF ORGANIZATION | 9g. ORGANIZATIONAL ID# ☐ NONE |
|---|---|---|---|---|

10. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☑ added, or give entire. ☐ restated collateral description, or describe collateral ☐ assigned.

Purchase from CM Process Solutions, LLC., 2 Single Column Mobil Dumpers, Serial #11608 & #11609; as per invoice 8654, dated November 19, 2012, together all accessions, additions, replacements and substitutions relating to the foregoing.
Purchase from Marion Mixers, Inc., 2 USDA Sanitary Mixers, Model SP14-5672, Serial #12047 & #12048, as per invoice 9 0909439-IN dated September 11, 2012, together all accessions, additions, replacements and substitutions relating to the foregoing.

11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

11a. ORGANIZATION'S NAME

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

12. OPTIONAL FILER REFERENCE DATA

STANDARD FORM - FORM UCC-3 (REV.01/2005)          Filing Office Copy          Approved by the Secretary of State, State of Florida

01/15/13 16:19:09 LLB

## STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT AMENDMENT FORM

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON
Jennifer Goss

B. SEND ACKNOWLEDGEMENT TO:
Name  Iberiabank

Address  2150 Goodlette Road N

Address

City/State/Zip  Naples, FL 34102

**FLORIDA SECURED TRANSACTION REGISTRY**

**FILED**
**2012 Dec 24 AM 08:00**

**\*\*\*\*  201208085733  \*\*\*\***

\*\*\*C \* 12241244439401-15.00\*\*\*15.00\*\*\*

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY.

1a. INITIAL FINANCING STATEMENT FILE #
201105640829

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. CURRENT RECORD INFORMATION – DEBTOR NAME – INSERT ONLY ONE DEBTOR NAME (2a OR 2b)

2a. ORGANIZATION'S NAME
Radno, Inc. dba Goldcoast Salads

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

3. CURRENT RECORD INFORMATION – SECURED PARTY NAME – INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

3a. ORGANIZATION'S NAME
Iberiabank

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

4. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

5. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

6. ☐ **ASSIGNMENT** (full or partial): Give name of assignee in item 9a or 9b and address of assignee in item 9c, and also give name of assignor in item 11.

7. ☐ **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.
☐ CHANGE name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.
☐ DELETE name: Give record name to be deleted in item 8a or 8b.
☐ ADD name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

8. CURRENT RECORD INFORMATION – INSERT ONLY ONE NAME (8a OR 8b) – Do Not Abbreviate or Combine Names

8a. ORGANIZATION'S NAME
IberiaBank

| 8b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

9. CHANGED (NEW) OR ADDED INFORMATION – INSERT ONLY ONE NAME (9a OR 9b) – Do Not Abbreviate or Combine Names

9a. ORGANIZATION'S NAME

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 9c. MAILING ADDRESS Line One | | This space not available. | | |
|---|---|---|---|---|
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

| 9d. TAX ID# | REQUIRED ADD'L INFO RE: ORGANIZATION DEBTOR | 9e. TYPE OF ORGANIZATION | 9f. JURISDICTION OF ORGANIZATION | 9g. ORGANIZATIONAL ID# ☐ NONE |
|---|---|---|---|---|

10. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☑ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

Purchase from CM Process Solutions, LLC., 100 600lb Buggies, as per Invoice #555, dated November 19, 2012, together all accessions, additons, replacements and substitutions relating to the foregoing.

11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☑ and enter name of DEBTOR authorizing this Amendment.

11a. ORGANIZATION'S NAME

| 11b. INDIVIDUALS' LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

12. OPTIONAL FILER REFERENCE DATA

STANDARD FORM - FORM UCC-3 (REV.01/2003)          Filing Office Copy          Approved by the Secretary of State, State of Florida

04/04/13 14:09:25 EDT

# STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT AMENDMENT FORM

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**
Jennifer Goss

**B. SEND ACKNOWLEDGEMENT TO:**
Name: IberiaBank
Address: 2150 Goodlette Road N
City/State/Zip: Naples, FL 34102

FLORIDA SECURED TRANSACTION REGISTRY

**FILED**
2013 Mar 14 AM 08:00

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1a. **CURRENT RECORD INFORMATION - FINANCING STATEMENT FILE #:**
201100345300

1b. This FINANCING STATEMENT AMENDMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS.

2. **CURRENT RECORD INFORMATION - DEBTOR NAME – INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**
2a. ORGANIZATION'S NAME
Radinc, Inc. dba Goldcoast Salads

3. **CURRENT RECORD INFORMATION – RECURRED PARTY NAME – INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**
3a. ORGANIZATION'S NAME
IberiaBank

4. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

5. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

6. ☐ **ASSIGNMENT** (full or partial): Give name of assignee in item 9a or 9b and address of assignee in item 11.

7. ☐ **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 9 and/or 10.
☐ CHANGE name and/or address: Give current record name in item 8a or 8b; also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 11.
☐ DELETE name: Give record name to be deleted in item 8a or 8b.
☐ ADD name: Complete item 9a or 9b, and also complete items 11-12 (if applicable).

8. **CURRENT RECORD INFORMATION – INSERT ONLY ONE NAME (8a OR 8b) – Do Not Abbreviate or Combine Names**
8a. ORGANIZATION'S NAME

9. **CHANGED (NEW) OR ADDED INFORMATION – INSERT ONLY ONE NAME (9a OR 9b) – Do Not Abbreviate or Combine Names**
9a. ORGANIZATION'S NAME

10. **AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted, or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

Purchase from Toyota Industrial Equipment, 1 2013 Toyota Electric Double Reach/Truck, MLT # 52007 model # 8HDU25IXTD0 / Serial # 8HDU25IXTD046 with Battery model # 12-125-13 / Serial # HAB662 and Charger model # ACR-1232/g140 / Serial # HAB6e and 1 2012 Toyota Electric Double Reach/Truck, MLT # 52007 model # 8HBU25IXTD0 / Serial # HAB666 with Battery model # 12-125-13 / Serial # HAB663 and Charger model # ACR-1232/g140 / Serial # HAB6ee and 1 400lb 36000 Buggy Wurster model # PCT78 / Serial # 718YAE779X1200XXXL - Proceeds of SEC attached together all accessions, accessions, attachments, replacements and substitutions relating to the foregoing;

11. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.
11a. ORGANIZATION'S NAME

12. **OPTIONAL FILER REFERENCE DATA**
STANDARD FORM - FORM UCC3 (REV 05/2013)

Filing Office Copy

Approved by the Secretary of State, State of Florida

04/25/13 10:21:47 PM

FLORIDA SECURED TRANSACTION REGISTRY
FILED
2013 Apr 10 AM 08:00
****  20130802704  ****
***C * 041813481889501.1800***168.00***

STATE OF FLORIDA UNIFORM COMMERCIAL CODE
FINANCING STATEMENT AMENDMENT FORM

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON
Jennifer Goss

B. SEND ACKNOWLEDGMENT TO:
Name    Borrower
Address 2150 Goodlette Road N

City/State/Zip Naples, FL 34102

THE ABOVE!

1a. INITIAL FINANCING STATEMENT FILE #
20110680629

1b. [ ] This FINANCING
STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS

2. [ ] CURRENT RECORD INFORMATION-- DEBTOR NAME -- INSERT ONLY ONE DEBTOR NAME (2a OR 2b)
Redro, Inc., dba CDdiscoast Selects

| | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | |
| 2b. INDIVIDUAL'S LAST NAME | | | |

3. [ ] CURRENT RECORD INFORMATION -- SECURED PARTY NAME -- INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)
Borrower

| | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| 3a. ORGANIZATION'S NAME | | | |
| 3b. INDIVIDUAL'S LAST NAME | | | |

4. [ ] TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

5. [ ] CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

6. [ ] ASSIGNMENT (full or partial): Give name of assignee in item 8a or 8b and address of assignee in item 9c and also give name of assignor in item 11.

7. [ ] AMENDMENT (PARTY INFORMATION): This Amendment affects [ ] Debtor or [ ] Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.
[ ] CHANGE name and/or address: Give current record name in item 8a or 8b; also give new [ ] DELETE name: Give record name [ ] ADD name: Complete item 8a or 8b, name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c. to be deleted in item 8a or 8b. and also complete items 9c-9f (if applicable).

8. CURRENT RECORD INFORMATION -- INSERT ONLY ONE NAME (8a OR 8b) -- Do Not Abbreviate or Combine Names

| | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| 8a. ORGANIZATION'S NAME Borrower | | | |
| 8b. INDIVIDUAL'S LAST NAME | | | |

9. CHANGED (NEW) OR ADDED INFORMATION -- INSERT ONLY ONE NAME (9a OR 9b) -- Do Not Abbreviate or Combine Names

| | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| 9a. ORGANIZATION'S NAME | | | |
| 9b. INDIVIDUAL'S LAST NAME | | | |

| 9c. MAILING ADDRESS Line One | | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|
| 9c. MAILING ADDRESS Line Two | | CITY | | | |

| 9d. TAX ID# | 9e. TYPE OF ORGANIZATION | 9f. JURISDICTION OF ORGANIZATION | 9g. ORGANIZATIONAL ID # |
|---|---|---|---|
| | | | [ ] NONE |

10. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral [ ] deleted or [ ] added, or give entire [ ] restated collateral description, or describe collateral [ ] assigned.

11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here [ ] and enter name of DEBTOR authorizing this Amendment.

| 11a. ORGANIZATION'S NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| 11b. INDIVIDUAL'S LAST NAME | | | |

12. OPTIONAL FILER REFERENCE DATA

STANDARD FORM - FORM UCC-3 (REV 12/2007)

Filing Office Copy

Approved by the Secretary of State, State of Florida

04/25/13 12:21:58 PM

FLORIDA SECURED TRANSACTION REGISTRY

**FILED**

2013 Apr 15 AM 08:00

**** 201308830694 ****

***C * 04151348326501-15.00***15.00***

STATE OF FLORIDA UNIFORM COMMERCIAL CODE
FINANCING STATEMENT AMENDMENT FORM

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON
Jennifer Goss

B. SEND ACKNOWLEDGEMENT TO:
Name   Iberiabank

Address  2150 Goodlette Road N

Address

City/State/Zip Naples, FL 34102

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # 201106540926 | 1b. | This FINANCING STATEMENT AMENDMENT is to be filed (for record) (or reported) in the REAL ESTATE RECORDS. |

2. CURRENT RECORD INFORMATION – DEBTOR NAME – INSERT ONLY ONE DEBTOR NAME (2a OR 2b)

2a. ORGANIZATION'S NAME
Radno, Inc. dba Goldcoast Salads

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

3. CURRENT RECORD INFORMATION – SECURED PARTY NAME – INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

3a. ORGANIZATION'S NAME
Iberiabank

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

4. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

5. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

6. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

7. ☐ AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.
☐ CHANGE name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.
☐ DELETE name: Give record name to be deleted in item 8a or 8b.
☐ ADD name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

8. CURRENT RECORD INFORMATION – INSERT ONLY ONE NAME (8a OR 8b) – Do Not Abbreviate or Combine Names

8a. ORGANIZATION'S NAME
IberiaBank

| 8b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

9. CHANGED (NEW) OR ADDED INFORMATION: – INSERT ONLY ONE NAME (9a OR 9b) – Do Not Abbreviate or Combine Names

9a. ORGANIZATION'S NAME

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 9c. MAILING ADDRESS Line One | | This space not available. | | |
|---|---|---|---|---|
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
| 9d. TAX ID# SEQUENCE ADD'L INFO RE ORGANIZATION DEBTOR | 9e. TYPE OF ORGANIZATION | 9f. JURISDICTION OF ORGANIZATION | 9g. ORGANIZATIONAL ID#. NONE |

10. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☑ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

Purchase from CM Process Solutions, LLC, Mobile Dumper, Serial #11608, #11609 & #11637, as per Invoice #633, dated February 11, 2016, together all accessions, additions, replacements and substitutions relating to the foregoing.

11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

11a. ORGANIZATION'S NAME

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

12. OPTIONAL FILER REFERENCE DATA

STANDARD FORM - FORM UCC-3 (REV. 01/2003)     Filing Office Copy     Approved by the Secretary of State, State of Florida

07/17/13 10:46:27 E9

FLORIDA SECURED TRANSACTION REGISTRY

**FILED**
2013 Jan 24 AM 08:00

\*\*\*\*\*\*    20130529232OX    \*\*\*\*\*
\*\*\*\*C \* 002,6150000/201,15.00\*\*\*\*15.00\*\*\*

**STATE OF FLORIDA UNIFORM COMMERCIAL CODE**
**FINANCING STATEMENT AMENDMENT FORM**

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON
Jennifer Goss

B. SEND ACKNOWLEDGEMENT TO:
Name: DEBTOR HERE
Address: 2150 Goodlette Road N
Address:
City/State/Zip: Naples, FL 34102

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
20110664869

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS.

2. ☐ CURRENT RECORD INFORMATION – DEBTOR NAME– INSERT ONLY ONE DEBTOR NAME (2a OR 2b)
Radmol, Inc. dba Goldcoast Salads

2a. ORGANIZATION'S NAME | FIRST NAME | MIDDLE NAME | SUFFIX

2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

3. ☐ CURRENT RECORD INFORMATION – SECURED PARTY NAME – INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

3a. ORGANIZATION'S NAME | FIRST NAME | MIDDLE NAME | SUFFIX

3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

4. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

5. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

6. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 9a or 9b and address of assignee in item 9c and give name of assignor in item 7L

7. ☐ AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.
☐ CHANGE name and/or address: Give current record name in item 7a or 7b; also give new name (if name change) in item 8a or 8b and/or new address (if address change) in item 7c.
☐ DELETE name: Give record name to be deleted in item 7a or 7b.
☐ ADD name: Complete item 9a or 9b, and also complete items 9d-9g (if applicable).

7a. ORGANIZATION'S NAME | FIRST NAME | MIDDLE NAME | SUFFIX

7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

8. CURRENT RECORD INFORMATION – INSERT ONLY ONE NAME (8a OR 8b) – Do Not Abbreviate or Combine Names
BenBank

8a. ORGANIZATION'S NAME
BenBank | FIRST NAME | MIDDLE NAME | SUFFIX

8b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

9. CHANGED (NEW) OR ADDED INFORMATION– INSERT ONLY ONE NAME (9a OR 9b) – Do Not Abbreviate or Combine Names

9a. ORGANIZATION'S NAME | | | |

9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

9c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

MAILING ADDRESS Line Two | | This space not available. | |

9d. TAX ID# | 9e. TYPE OF ORGANIZATION | 9f. JURISDICTION OF ORGANIZATION | 9g. ORGANIZATIONAL ID # ☐ NONE

10. ☐ AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☑ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.
Purchase from Modico Industries, 1 Sanitary Elevating Belt Conveyor Machine, Item #027/46.2, #2000 / Serial # 161162, as per Invoice #TL131-754690, dated March 20, 2013, together with all accessions, additions, replacements and substitutions relating to the foregoing.

11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

11a. ORGANIZATION'S NAME

11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

12. OPTIONAL FILER REFERENCE DATA

STANDARD FORM – FORM UCC-3 (REV 2/1/2007) | Filing Office Copy | Approved by the Secretary of State, State of Florida

## Composite Exhibit "E"

### Guaranties

11/18/11 14:29:02 PM

# COMMERCIAL GUARANTY

[illegible]

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

| | | | |
|---|---|---|---|
| **Borrower:** | RADNO, INC dba GOLDCOAST SALADS (TIN: 59-3404478)<br>3555 PLOVER AVENUE<br>NAPLES, FL 34117 | **Lender:** | IBERIABANK<br>Commercial Lending - Naples FL<br>2150 Goodlette Road North<br>Naples, FL 34102 |
| **Guarantor:** | PETER J. RADNO, SR. (SSN: 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)<br>160 LAMBTON LANE<br>NAPLES, FL 34104 | | |

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to pursue

## COMMERCIAL GUARANTY
### (Continued)

any other remedy within Lender's power; or (F) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the indebtedness; (D) any right to claim discharge of the indebtedness on the basis of unjustified impairment of any collateral for the indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**GUARANTOR FINANCIAL REPORTING REQUIREMENTS.** During the term of this Agreement, Guarantor(s) shall provide Lender with all reasonably requested financial information, including but not limited to the following:

* Annual personal financial statements due every 12 months.
* Annual personal income tax returns due 30 days after filing.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

Amendments. This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

Attorneys' Fees; Expenses. Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

Caption Headings. Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions.

Integration. Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

Interpretation. In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

Notices. Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

No Waiver by Lender. Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required nor in all cases such consent may be granted or withheld in the sole discretion of Lender.

Successors and Assigns. Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

Waive Jury. Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically

11/18/11 14:29:04 PM

## COMMERCIAL GUARANTY
### (Continued)

Loan No: 5300220906                                                    Page 2

stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code.

**Borrower.** The word "Borrower" means RADNO, INC dba GOLDCOAST SALADS and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation PETER J. RADNO, SR., and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's Indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means SIERRABANK, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED NOVEMBER 8, 2011.

GUARANTOR:

X _____
PETER J. RADNO, SR.

---

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF ___Florida___

COUNTY OF ___Collier___

TERRI L POLI
MY COMMISSION # EE055054
EXPIRES November 14, 2014

The foregoing instrument was acknowledged before me this ___ day of ___Nove m be r___, 20 11 by PETER J. RADNO, SR., who is personally known to me or who has produced ___ as identification.

_____
(Signature of Person Taking Acknowledgment)

Terri L. Poli
(Name of Acknowledger Typed, Printed or Stamped)

_____
(Title or Rank)

_____
(Serial Number, if any)

11/18/11  14:28:58 PM

# COMMERCIAL GUARANTY

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Borrower: | RADNO, INC dba GOLDCOAST SALADS (TIN: 59-3404478) 3568 PLOVER AVENUE NAPLES, FL 34117 | Lender: | IBERIABANK Commercial Lending - Naples FL 2180 Goodlette Road North Naples, FL 34102 |
| Guarantor: | PETER P. RADNO, JR. (SSN: 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) 7603 FOUNDERS CIRCLE NAPLES, FL 34104 | | |

CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE. For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

INDEBTEDNESS. The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

CONTINUING GUARANTY. THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

DURATION OF GUARANTY. This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, anticipated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

GUARANTOR'S AUTHORIZATION TO LENDER. Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one of more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

GUARANTOR'S REPRESENTATIONS AND WARRANTIES. Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

GUARANTOR'S WAIVERS. Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to pursue

11/18/11 14:28:59 FX

## COMMERCIAL GUARANTY
(Continued)

Loan No: 5300220506

Page 3

applied to the country, all references in dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means RADMO, INC dba GOLDCOAST SALADS and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation PETER P. RADMO, JR., and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means BANKAMERIC, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED NOVEMBER 2, 2011.

**GUARANTOR:**

X _____
PETER P. RADMO, JR.

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF  _Florida_ )
                     ) SS
COUNTY OF _Pinellas_ )

The foregoing instrument was acknowledged before me this ___2___ day of _November_, ___20 11___
by PETER P. RADMO, JR., who is personally known to me or who has produced _____ as identification.

_____
Signature of Person Taking Acknowledgment

_Terri L. Poli_
Name of Acknowledger Typed, Printed or Stamped

_____
Title or Rank

_____
Serial Number, if any)

TERRI L. POLI
MY COMMISSION # EE81084
EXPIRES November 14, 2014
FloridaNotaryService.com

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** RADNO, INC., a Florida corporation (TIN: 59-3404478); 3566 PLOVER AVENUE, NAPLES, FL 34117

**Lender:** [illegible]BANK, Commercial Lending - Naples FL, 2150 Goodlette Road North, Naples, FL 34102

**Guarantor:** PETER J. RADNO, SR. (SSN: 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); 168 LAMBTON LANE, NAPLES, FL 34104

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to pursue

# COMMERCIAL GUARANTY
## (Continued)

**GUARANTY'S WAIVERS.**

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.**

**SUBORDINATION OF BORROWER'S DEBTS TO LENDER.**

**TAX RETURNS, FINANCIAL STATEMENTS AND REPORTS.**

**MISCELLANEOUS PROVISIONS.**

**Amendments.**

**Attorneys' Fees; Expenses.**

**Caption Headings.**

**Governing Law.**

**Integration.**

**Interpretation.**

**THIRD PARTY DEFAULTS.**

**Notices.**

08/27/12 10:18:59 EMA

**COMMERCIAL GUARANTY**
(Continued)

Loan No: 5300220905

Page 3

current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

No Waiver by Lender. Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Successors and Assigns. Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

Waive Jury. Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

Borrower. The word "Borrower" means RADNO, INC., a Florida corporation and includes all co-signers and co-makers signing the Note and all their successors and assigns.

Guarantor. The word "Guarantor" means everyone signing this Guaranty, including without limitation PETER J. RADNO, SR., and in each case, any signer's successors and assigns.

Guaranty. The word "Guaranty" means this guaranty from Guarantor to Lender.

Indebtedness. The word "Indebtedness" means Borrower's Indebtedness to Lender as more particularly described in this Guaranty.

Lender. The word "Lender" means BENIABANK, its successors and assigns.

Note. The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED AUGUST 10, 2012.

GUARANTOR:

_____
PETER J. RADNO, SR.

**INDIVIDUAL ACKNOWLEDGMENT**

STATE OF _Florida_                                                    )
                                                                                        )  SS
COUNTY OF _Collee_                                                 )

TERRI L POLI
MY COMMISSION # EE026054
EXPIRES November 14, 2014

The foregoing instrument was acknowledged before me this _10th_ day of _August_ , _2012_
by PETER J. RADNO, SR., who is personally known to me or who has produced _____ as identification.

_____
(Signature of Person Taking Acknowledgment)

_____
(Name of Acknowledger Typed, Printed or Stamped)

_____
(Title or Rank)

_____
(Serial Number, if any)

08/27/12 10:18:53 KMA

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** RADNO, INC., a Florida corporation (TIN: 58-3404476)
3565 PLOVER AVENUE
NAPLES, FL 34117

**Lender:** IBERIABANK
Commercial Lending - Naples FL
2150 Goodlette Road North
Naples, FL 34102

**Guarantor:** PETER P. RADNO, JR. (SSN: 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)
7903 FOUNDERS CIRCLE
NAPLES, FL 34104

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to pursue

# COMMERCIAL GUARANTY
## (Continued)

Loan No: 5300220908

any other remedy within Lender's power; or (F) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Borrower, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the indebtedness; (D) any right to claim discharge of the indebtedness on the basis of unjustified impairment of any collateral for the indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment, or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS. Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR. Guarantor agrees that the indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

TAX RETURNS, FINANCIAL STATEMENTS AND REPORTS. Guarantor shall furnish Lender the following, all in a form and content satisfactory to Lender: (i) annually until all of the indebtedness guaranteed under this Guaranty has been paid in full and all other obligations of Guarantor hereunder have been fully performed, CPA prepared tax returns of Guarantor within thirty (30) days of filing each year, including any applicable extension documents, K-1's and other schedules filed therewith; (ii) annually until all of the indebtedness guaranteed under this Guaranty has been paid in full and all other obligations of Guarantor hereunder have been fully performed, personally prepared financial statements of Guarantor within ninety (90) days of each calendar year end; and (iii) such other financial information and reports as may be reasonably required by Lender. Failure to provide financial information to Lender when due shall be a material event of default under this Guaranty, the Note and other Related Documents.

GLOBAL DEBT SERVICE COVERAGE RATIO REQUIREMENT. Guarantor agrees that, until the indebtedness guaranteed under this Guaranty has been paid in full, Borrower, Peter J. Redco, Sr. and Peter P. Redco, Jr. (collectively the "Global Parties") shall, at all times, collectively maintain a global debt service coverage ratio equal to or in excess of 1.25 to 1.00 ("Global DSCR"). The Global DSCR shall be defined as follows: the Global Parties' aggregate Net Income plus Depreciation Expense plus Amortization Expense plus Interest Expense plus Rental Expense (including rental expense to the Global Parties' affiliates) divided by all of the Global Parties' aggregate Principal and/or interest debt service payments due Lender and other creditors. The Global DSCR shall be measured by Lender at least annually in conjunction with receipt of required annual financial statements. Lender's determination of Global DSCR hereunder shall be conclusive in the absence of manifest error. Guarantor acknowledges and agrees that failure to strictly comply with this Global DSCR requirement shall be a material event of default under this Guaranty, the Note and other Related Documents.

THIRD PARTY DEFAULTS. In addition to all other events of default, Guarantor covenants and agrees that a default by Borrower or Guarantor under any note, loan agreement, guaranty, security agreement or other document in favor of a creditor shall be a material event of default under this Guaranty, the Note and other Related Documents.

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Guaranty:

Amendments. This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

Attorneys' Fees; Expenses. Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

Caption Headings. Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions.

Integration. Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty. Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

Interpretation. In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

Notices. Any notice required to be given under this Guaranty shall be given in writing, and except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's

06/27/12 10:18:54 XGA

Loan No: 530022D806

## COMMERCIAL GUARANTY
(Continued)

Page 3

current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

No Waiver by Lender. Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Successors and Assigns. Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

Waive Jury. Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

Borrower. The word "Borrower" means RADNO, INC., a Florida corporation and includes all co-signers and co-makers signing the Note and all their successors and assigns.

Guarantor. The word "Guarantor" means everyone signing this Guaranty, including without limitation PETER F. RADNO, JR., and in each case, any signer's successors and assigns.

Guaranty. The word "Guaranty" means the guaranty from Guarantor to Lender.

Indebtedness. The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

Lender. The word "Lender" means BENNAMIN, its successors and assigns.

Note. The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED AUGUST 10, 2012.

GUARANTOR:

X _____
PETER F. RADNO, JR.

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF ___Florida___ )
                        ) SS
COUNTY OF ___Collier___ )

The foregoing instrument was acknowledged before me this ___10th___ day of ___August___, ___20_12___
by PETER F. RADNO, JR., who is personally known to me or has produced _____ as identification.

_____
Signature of Person Taking Acknowledgment

_____
Name of Acknowledger Typed, Printed or Stamped

_____
Title or Rank

_____
Serial Number, if any

TERRI L. POLI
MY COMMISSION # EE559354
EXPIRES November 14, 2014

## Exhibit "F"

## First Forbearance Agreement

## FORBEARANCE AGREEMENT

This Forbearance Agreement (this "Agreement") is made effective as of this *10th* day of *October*, 2013 (the "Effective Date"), by and between IBERIABANK, a Louisiana state bank ("Lender"), RADNO, INC., a Florida corporation d/b/a Goldcoast Salads ("Borrower"), and PETER J. RADNO, SR., an individual, and PETER P. RADNO, JR., an individual (together, "Guarantors").

### WITNESSETH:

WHEREAS, the Lender made a loan to Borrower bearing loan number 5300220906 (the "Loan"), which was initially evidenced by that certain Promissory Note dated November 2, 2011 in the principal amount of $600,000.00, and which is currently evidenced by that certain Promissory Note dated August 10, 2012 in the principal amount of $1,500,000.00, as modified by that certain Forbearance / Extension / Modification Agreement dated March 4, 2013, and that certain Forbearance / Extension / Modification Agreement dated July 23, 2013, all executed between Borrower and Lender (collectively, the "Note");

WHEREAS, pursuant to the Forbearance / Extension / Modification Agreement dated March 4, 2013, Lender agreed to modify the terms of the Note to allow Borrower to make interest-only payments through and including August 10, 2013, and for payments of principal and interest to begin on September 10, 2013 and to continue on the 10th day of each month thereafter, until maturity on February 10, 2018, when all indebtedness on the Note will be due and payable in full;

WHEREAS, pursuant to the Forbearance / Extension / Modification Agreement dated July 23, 2013, Lender agreed to modify the terms of the Note to allow Borrower to make interest-only payments through and including February 10, 2014, and for payments of principal and interest to begin on March 10, 2014;

WHEREAS, the Loan is also evidenced by those certain Business Loan Agreements dated November 2, 2011 and August 10, 2012, both entered into between Borrower and Lender (together, the "Loan Agreement");

WHEREAS, the indebtedness owed on the Loan is secured by that certain Commercial Security Agreement dated November 2, 2011, executed by Borrower in favor of Lender (the "Security Agreement");

WHEREAS, to perfect its security interest under the Security Agreement, the Lender filed that certain UCC-1 Financing Statement with the Florida Secured Transaction Registry, bearing Document #201105640629, as modified by those certain UCC-3 Financing Statement Amendment Forms bearing Document #201206423070, #201207097339, #201207145619, #201207342783, #20120758647X, #201207698006, #201207785405, #201208085725, #201208085733, #201308631233, #201308802704, #201308830694, and #20130929320X (collectively, the "Financing Statements");

WHEREAS, the indebtedness owed on the Loan is also secured by those certain Commercial Guaranty agreements dated November 2, 2011 and August 10, 2012, executed by Guarantors (collectively, the "Guaranties");

WHEREAS, the Note, the Loan Agreement, the Security Agreement, the Financing Statements, and the Guaranties, as well as all ancillary documents relating to the Loan shall herein be referred to as the "Loan Documents"; and

WHEREAS, Borrower defaulted on its obligations under the Note, and thereby Guarantors defaulted on their obligations under the Guaranties, by (i) failing to maintain a debt service coverage ratio equal to or in excess of the Traditional DSCR, as defined in the Loan Agreement, and (ii) failing to maintain a global debt service coverage ratio equal to or in excess of the Global DSCR, as defined in the Loan Agreement (the "Covenant Defaults");

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, and for the other good and valuable consideration set forth in this Agreement, the adequacy and receipt of which are hereby acknowledged, the parties agree, each with the other, as follows:

1.    Recitations. The foregoing recitations are true and correct, and are incorporated herein by this reference.

2.    Definitions. Unless specifically defined in this Agreement, all terms capitalized herein shall have the meanings given such terms in the Loan Documents.

3.    Authorization. The execution, delivery, and performance of this Agreement by Borrower and Guarantors have been duly and properly authorized and approved, and Borrower and Guarantors have the power and authority to execute this Agreement and perform their respective obligations hereunder.

4.    Outstanding Indebtedness. Borrower and Guarantors acknowledge and agree that:

(a)    The outstanding principal balance owed to Lender with regard to the Loan, as of September 9, 2013 was $1,296,854.13;

(b)    Interest and attorneys' fees and costs have and will continue to accrue from September 9, 2013 in accordance with the Loan Documents and as otherwise expressly provided herein;

(c)    The indebtedness is evidenced by the Loan Documents, Lender is the owner and holder of the Loan Documents, and Lender has a valid and perfected security interest and lien in the property and other collateral encumbered by the Security Agreement and referenced in the Financing Statements (the "Collateral"); and

(d)    The Covenant Defaults described above continue, and Lender is entitled to the full amount due under the Loan Documents without reduction, offset, or any defense thereto, and such amounts are now due and payable in full.

5. **Forbearance; Loan Modifications**. Subject to performance by Borrower and Guarantors of the terms of this Agreement, Lender agrees to forbear from the Effective Date through December 31, 2013 (the "Forbearance Period") from filing any proceedings or otherwise taking any action to exercise or enforce its rights and remedies against Borrower or Guarantors under or in connection with the Loan Documents unless and until the earlier of the occurrence of a Forbearance Default, as defined in this Agreement, or the expiration of the Forbearance Period. The Lender's agreement to forbear is subject to the following terms and conditions:

(a) During the Forbearance Period, Borrower shall continue to make monthly payments of interest only on the Note, as required by the Forbearance / Extension / Modification Agreement dated July 23, 2013 (the "Monthly Forbearance Payments");

(b) Borrower and Guarantors shall fully and promptly comply with all covenants and agreements contained in the Loan Documents, as modified by the terms of this Agreement;

(c) Borrower shall continue to maintain insurance and pay and discharge its indebtedness and obligations on the Collateral, as required by the Loan Documents;

(d) Neither Lender's forbearance from pursuing its available rights and remedies, nor past and future acceptance of any partial payments during the Forbearance Period or otherwise, nor execution of and acts taken or refrained or omitted from being taken pursuant to this Agreement, shall: (i) constitute or have the effect of a waiver, in whole or in part, by Lender of any of its rights or remedies under the Loan Documents, applicable law, or otherwise, of any default which has occurred or may occur under the Loan Documents on the part of Borrower, (ii) constitute a release of any indebtedness or obligation owed or guaranteed by Borrower or Guarantors to Lender, or (iii) constitute a reinstatement of the Loan Documents, which are and shall remain in default;

(e) Notwithstanding Lender's forbearance, Lender shall not be precluded from taking such action as it deems necessary to preserve and protect the Collateral and the interests of Lender in it;

(f) At the time of the expiration of the Forbearance Period, Borrower and Guarantors shall have cured the Covenant Defaults by obtaining and maintaining a debt service coverage ratio equal to or in excess of the Traditional DSCR and a global debt service coverage ratio equal to or in excess of the Global DSCR, as those terms are defined in the Loan Agreement;

(g) After the expiration of the Forbearance Period, in the event that the Covenant Defaults have not been cured such that Borrower and Guarantors are not in compliance with the Loan Documents, or in the event of any other default under the Loan Documents, Lender shall be entitled to file an Action, as defined herein; and

(h) In accordance with the Forbearance / Extension / Modification Agreement dated July 23, 2013, Borrower shall resume monthly payments of principal and interest on the Note beginning on March 10, 2014.

JAX\1804912_3

6.     **Representations and Warranties.** Borrower and Guarantors each represent and warrant to Lender as follows, which representations and warranties shall survive the expiration of the Forbearance Period or any term of this Agreement:

(a)     This Agreement is being freely and voluntarily entered into;

(b)     This Agreement and the Loan Documents constitute legally binding obligations and are enforceable against Borrower and Guarantors in accordance with their respective terms;

(c)     Borrower and Guarantors each either have none or hereby waive any defenses, affirmative defenses, set-offs, claims, counterclaims, or causes of action of any kind or nature whatsoever with respect to the administering or funding of the Loan or any of the documents or instruments evidencing, securing, or in any way relating to the Loan and the enforcement of the Loan Documents which they may have as of the date hereof;

(d)     Neither Borrower nor Guarantors are a party to, or subject of, any lawsuit, complaint, counterclaim, cross-claim, adversary proceeding, arbitration proceeding, bankruptcy or insolvency proceeding, administrative claim, or other legal action or proceeding;

(e)     Neither the execution or delivery of this Agreement or any other document, nor the performance of any actions required thereunder is being consummated by Borrower or Guarantors with or as a result of any actual intent to hinder, delay, or defraud any person or entity to which either of them now or will hereafter become indebted; and

(f)     The Covenant Defaults exist, are in violation of the terms of the Loan Documents, and constitute material defaults of the Loan Documents, notice of such Covenant Defaults has been properly given to Borrower and Guarantors as required by the Loan Documents, and Lender is entitled to bring an action on the Loan Documents immediately as a result thereof.

7.     **No Further Advances.** Borrower acknowledges and agrees that, notwithstanding the terms and conditions of this Agreement, Lender is not required to make, and Borrower hereby waives the right to receive, any further advances under the Note. This Paragraph 7 modifies the Note and shall survive the expiration of the Forbearance Period and the termination of this Agreement.

8.     **Forbearance Defaults.** For the purposes of this Agreement, each of the following, whether together or separate, shall constitute a default under this Agreement (a "Forbearance Default"):

(a)     Borrower or Guarantors fail to make any Monthly Forbearance Payment to Lender under this Agreement when and as the same becomes due and payable, or otherwise fails to fulfill any requirement of Paragraph 5 above, including curing the Forbearance Defaults;

(b)     Borrower or Guarantors file or institute against Lender or any of its former, current, or future officers, directors, employees, agents, or attorneys any lawsuit, complaint, administrative claim, adversary proceeding, or other legal action;

JAX\1804912_3

-4-

(c)     Any third party obtains, after the date hereof, a lien against any of the Collateral, seizes or otherwise repossesses any portion of such Collateral, or brings suit and obtains a judgment against Borrower or Guarantors, or any federal, state, or other governmental authority tax lien or other lien is filed against all or any portion of such Collateral;

(d)     Borrower or Guarantors take action of any kind or nature whatsoever, either directly or indirectly, to impose, impede, obstruct, hinder, enjoin, or otherwise interfere with the exercise by Lender of its rights and remedies against or with respect to the Collateral;

(e)     Borrower or Guarantors have made any false statements in connection with the execution of this Agreement or make any false or materially misleading statements in connection with any of the Borrower's or the Guarantors' representations and/or warranties set forth in Paragraph 6 above, rights, obligations, or responsibilities pursuant to performance of this Agreement, whether or not done knowingly or with fraudulent intent;

(f).    Borrower or Guarantors transfer ownership or interest in the Collateral without the written consent of Lender;

(g)     The facts or circumstances relating to Borrower's or Guarantors' financial condition, which caused Lender to enter into this Agreement, are substantially changed; or

(h)     Borrower or Guarantors submitted incorrect or incomplete information to Lender in connection with securing this Agreement.

9.     **Rights upon Default.** Upon the occurrence of a Forbearance Default:

(a)     Lender shall be relieved of any obligation under this Agreement to continue to forbear the exercise of its rights and remedies, and shall immediately have, and may immediately exercise, any and all rights and remedies which Lender may possess under the Loan Documents or applicable law, and may proceed forthwith and without further notice or an opportunity to cure against Borrower and Guarantors, and against the Collateral, in such order and in such manner as Lender shall elect;

(b)     Lender shall be entitled to receive, in addition to the indebtedness owed at the time of such default, interest at the default rate set forth in the Loan Documents, to be calculated from the Effective Date; and

(c)     Lender shall be entitled to receive any and all expenses incurred by Lender in exercising and enforcing its rights under any of the Loan Documents or this Agreement, including, without limitation, reasonable attorneys' fees and costs, whether or not any legal proceeding has been commenced, and including, without limitation, attorneys' fees and costs incurred in any proceeding before any state, federal, administrative, appellate, or bankruptcy court, beginning from the time of Borrower's and Guarantors' default under the Loan Documents and continuing with the preparation of this Agreement and in the enforcement of the Loan Documents or this Agreement.

10. **Bankruptcy.**

(a) In entering into this Agreement, Borrower and Lender hereby stipulate, acknowledge, and agree that Lender gave up valuable rights and agreed to forbear from exercising legal remedies available to it· in exchange for the promises, representations, acknowledgements, agreements, and warranties of Borrower, all of which have been accepted by Lender in good faith. So, as consideration for Lender agreeing to forbear from immediately enforcing its rights and remedies in the Loan Documents, Borrower agrees that in the event a bankruptcy petition under any Chapter of the Bankruptcy Code (11 U.S.C. § 101, et seq.) is filed by or against Borrower at any time after the execution of this Agreement, Lender shall be entitled to the immediate entry of an order from the appropriate bankruptcy court granting Lender complete relief from the automatic stay imposed by § 362 of the Bankruptcy Code (11 U.S.C. § 362) to consummate its foreclosure and other rights, including but not limited to obtaining a foreclosure judgment and sale, upon filing with the appropriate court of a motion for relief from the automatic stay with a copy of this Agreement attached thereto. Borrower specifically agrees (i) that upon filing a motion for relief from the automatic stay, Lender shall be entitled to relief from the stay without the necessity of an evidentiary hearing and without the necessity or requirement of the Lender to establish or prove the value of the Collateral or the lack of adequate protection of its interest in the Collateral, or the lack of equity in the Collateral; (ii) that the lifting of the automatic stay hereunder by the appropriate bankruptcy court shall be deemed to be "for cause" pursuant to § 362(d)(1) of the Bankruptcy Code (11 U.S.C. § 362(d)(1)); and (iii) that Borrower will not directly or indirectly oppose or otherwise defend against Lender's efforts to gain relief from the automatic stay. This provision is not intended to preclude Borrower from filing for protection under any Chapter of the Bankruptcy Code. The remedies prescribed in this paragraph are not exclusive to the and shall not limit Lender's rights under the Loan Documents, this Agreement, or under any law.

(b) All of the above terms and conditions have been freely bargained for and are all supported by reasonable and adequate consideration and the provisions herein are material inducements for Lender entering into this Agreement.

11. **Legal Action.** Borrower and Guarantors covenant and agree that upon the occurrence of· any Forbearance Default or at any time following the expiration of the Forbearance Period if Borrower or Guarantors remains or is in default under the Loan Documents, including without limitation the Covenant Defaults, Lender may immediately file an action with respect to the Loan Documents and the Collateral (an "Action"). In connection with such Action:

(a) Borrower and Guarantors each covenant that, at the option of Lender ·to be exercised in Lender's sole and absolute discretion, Borrower and Guarantors shall either:

(i) · Submit to an Action in Collier County, Florida, in which Borrower and Guarantors agree not to file any motions, assert any defenses, or otherwise take any action to impede or defend against Lender's ability to foreclose its security interest in the Collateral, and ·further agree to file or execute any documents to facilitate Lender's efforts to promptly foreclose the same; or

(ii)    Execute and deliver promptly to Lender or to Lender's designee any documentation necessary to transfer Borrower's right, title, and interest in the Collateral to Lender, together with all costs and expenses incurred or to be incurred by Lender and associated with the foregoing transfer;

(b)    Borrower and Guarantors each acknowledge and agree that Lender is not waiving any deficiency under the Loan Documents; and

(c)    Borrower and Guarantors each waive service of a summons in an Action such that service of process may be effectuated by sending copies of the complaint via certified mail, return receipt requested, to Radno, Inc., 3565 Plover Avenue, Naples, Florida 34117, to Peter J. Radno, Sr., 160 Lambton Lane, Naples, Florida 34104, and to Peter P. Radno, Jr., 7903 Founders Circle, Naples, Florida 34104. Lender is authorized to give notice to the Court of Borrower's and Guarantors' waiver of formal service, through a waiver of service under Rule 1.070(i), Florida Rules of Civil Procedure, or otherwise. Borrower and Guarantors further agree that responsive pleadings shall be served not later than twenty (20) days after service as set forth herein.

This Paragraph 11 shall survive the expiration of the Forbearance Period and the termination of this Agreement.

12.    **Complete Agreement.** This Agreement contains the entire agreement among the parties. This Agreement may not be modified except in writing and signed by the parties to be charged with its modification.

13.    **Waiver and Release.** In consideration of the forbearance by Lender as provided in this Agreement, Borrower and Guarantors, for themselves and each of their respective heirs, successors, assigns, officers, employees, directors, and agents (the "Releasing Parties"), do hereby remise, release, quit, satisfy, waive, forever discharge, and covenant not to sue, Lender, its parents, subsidiaries, affiliated entities, agents, and attorneys, their respective officers, directors, and employees (both past and present) (collectively, the "Released Parties"), and hold the Released Parties harmless, of and from all and all manner of actions, causes of action, suits, debts, accounts, reckonings, contracts, controversies, agreements, promises, trespasses, damages, judgments, executions, claims, losses, liabilities, and demands whatsoever (including actual, incidental, consequential, and punitive damages), in tort or in contract, and at law or in equity (including without limitation, claims of negligence, fraud, duress, mistake, tortious interference, or usury), whether presently possessed or hereafter arising, whether known or unknown, whether liability be direct or indirect, liquidated, or unliquidated, which the Releasing Parties ever had, now have, or may hereafter ever have against the Released Parties or any prior holder of the Loan Documents, upon or by reason of any matter, cause, or thing whatsoever which has arisen or may hereafter arise out of the Loan and the Loan Documents, related to or arising, directly or indirectly, because of or as a result of any act or omission, communication, transaction, occurrence, representation, promise, violation of any statute or law, or any other matter whatsoever, or thing done, omitted or suffered to be done or omitted by the Released Parties, arising out of or in connection with the making, disbursement, administration, enforcement, collection, or settlement of the Loan, the Loan Documents, or this Agreement. The

JAXUBD4912_3                                                -7-

termination or expiration of this Agreement shall not cancel or diminish the effect of this Paragraph 13.

14.    **Reservation of Rights and Remedies.** Notwithstanding the execution of this Agreement, Borrower and Guarantors acknowledge that all remedies of Lender under the terms of the Loan Documents shall survive the execution hereof and that each and every remedy shall be cumulative and concurrent and shall be in addition to each and every other right, power and remedy given hereunder. No failure by Lender to insist upon the strict performance of any covenant, agreement, term, or condition of this Agreement or the Loan Documents or to exercise any right, power, or remedy consequent upon a breach thereof shall constitute a waiver, express or implied, of any such breach or of such covenant, agreement, term, or condition.

15.    **TIME OF THE ESSENCE.** TIME IS OF THE ESSENCE WITH RESPECT TO THE PERFORMANCE BY BORROWER AND GUARANTORS OF THEIR OBLIGATIONS UNDER THIS AGREEMENT.

16.    **No Novation.** Neither this Agreement nor any other document delivered in connection herewith or action taken in connection herewith is intended to be or shall be construed to create, a novation, an accord and satisfaction, or a release of any obligations of Borrower and Guarantors under the Loan Documents, and the Loan Documents shall remain in full force and effect.

17.    **Survival and Severability.** The covenants, representations, and obligations of Borrower and Guarantors contained in this Agreement shall survive and continue in full force and effect notwithstanding an occurrence of an event of default hereunder, the repayment of the Loan, or failure to repay the Loan as provided herein or the consummation of any transaction contemplated by this Agreement. In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, the same shall not affect any other provision of this Agreement and this Agreement shall be construed as if such invalid or illegal or unenforceable provision had never been contained herein.

18.    **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Florida.

19.    **Interpretation.** This Agreement is the result of negotiations between Lender, Borrower, and Guarantors, is the product of all parties hereto, and has been reviewed by the parties' respective counsel, or the parties have had a sufficient opportunity for the review of their counsel. Accordingly, this Agreement shall not be construed against Lender merely because of Lender's involvement in the preparation thereof.

20.    **Further Action.** At any time and from time to time, upon request by Lender, Borrower, and Guarantors will take such actions as may, in the sole opinion of Lender, be reasonably necessary or desirable in order to effectuate the terms of this Agreement and the Loan Documents.

21.    **No Obligation to Make Further Advances.** Except as expressly provided herein, Lender is under no obligation to make any further advance under the Loan Documents, to

grant or make any further or additional loans to Borrower or Guarantors, or to extend or further amend or modify the Loan Documents.

22.     **Ratification of Loan Documents.** Borrower and Guarantors hereby ratify and reaffirm the Loan Documents, and confirm that the Loan Documents remain in full force and effect.

23.     **Binding Effects.** This Agreement may not be assigned by Borrower or Guarantors. This Agreement shall be binding upon, and shall inure to the benefit of, the respective heirs, personal representatives, successors, and permitted assigns of Lender and Borrower.

24.     **Captions.** The captions and headings contained in this Agreement are for convenience of reference only, and shall not be construed as limited or defining in any way the provisions of this Agreement.

25.     **Counterparts.** This Agreement may be executed by the parties hereto individually or in combination, in one or more counterparts, each of which shall be an original and all of which will constitute one and the same Agreement.

26.     **No Third-Party Beneficiaries.** The parties intend that this Agreement is solely for their benefit, and no person or entity not a party to this Agreement shall have any rights or privileges hereunder whatsoever, either as a third-party beneficiary or otherwise.

27.     **No Partnership or Joint Venture.** The relationship between Borrower and Lender and between Guarantors and Lender is, and at all times shall remain, solely that of debtors and creditor. No covenant or provision of this Agreement or the Loan Documents is intended, nor shall it be deemed or construed, to create a partnership, joint venture, agency, or common interest in profits or income between Lender and Borrower or between Lender and Guarantors, or to create an equity in the subject project in Lender.

28.     **Fees and Costs.** Borrower and Guarantors shall pay all costs and third-party expenses (including attorneys' fees) incurred by Lender in the enforcement of the Loan Documents or this Agreement whether incurred before or during litigation, whether at trial or on appeal, and whether suit be brought or not.

29.     **WAIVER OF JURY TRIAL.** LENDER, BORROWER, AND GUARANTORS HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVE THE RIGHT ANY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS AGREEMENT AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS, WHETHER VERBAL OR WRITTEN, OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER EXECUTING THIS AGREEMENT.

*[Remainder of this page intentionally left blank. Signatures on the following pages.]*

IN WITNESS WHEREOF, the parties have executed this Agreement the day and year first above written.

"LENDER"

IBERIABANK, a Louisiana state bank

By:

Name: Michael Babair

Title: Senior Vice President

STATE OF FLORIDA
COUNTY OF LEE

The foregoing instrument was acknowledged before me this 11TH day of October, 2013, by Michael Babair, a Senior Vice President of IBERIABANK, on behalf of the bank, who is personally known to me.



Notary Public, State of Florida
Name: DEBORAH A FUNK
My Commission Expires: October 30, 2017
My Commission Number is: FF053702

"BORROWER"

RADNO, INC., a Florida corporation

By: _____

Name: _____

Its: _____

STATE OF Florida.
COUNTY OF Collier

The foregoing instrument was acknowledged before me this 10 day of October, 2013, by Peter J. Radno, as President of RADNO, INC., a Florida corporation, on behalf of the company. He ☒ is personally known to me or ☐ has produced _____ as identification.

Notary Public, State of Florida
Name: Terri L. Poli

My Commission Expires: _____
My Commission Number is: _____

TERRI L. POLI
MY COMMISSION # EE035064
EXPIRES November 14, 2014
(407) 348-0153   FloridaNotaryService.com

"GUARANTORS"

PETER J. RADNO, SR., an individual

STATE OF Florida
COUNTY OF Collier

The foregoing instrument was acknowledged before me this 10 day of October, 2013, by PETER J. RADNO, SR., an individual. He ☒ is personally known to me or ☐ has produced _____ as identification.

Notary Public, State of Florida
Name: Terri L. Poli

My Commission Expires: _____
My Commission Number is: _____

TERRI L. POLI
SSION # EE035064
IRES November 14, 2014
(407) 348-0153   FloridaNotaryService.com

JAX\1820612_3

-11-

Case 8:14-cv-01316-EAK-TBM   Document 2   Filed 06/03/14   Page 87 of 94 PageID 203

PETER P. RADNO, JR., an individual

STATE OF Florida
COUNTY OF Collier

october

The foregoing instrument was acknowledged before me this 10 day of September, 2013, by PETER P. RADNO, JR., an individual. He ☑ is personally known to me or ☐ has produced _____ as identification.

Notary Public, State of __Florida__
Name: Terri L. Poli
My Commission Expires: _____
My Commission Number is: _____

TERRI L POLI
MY COMMISSION # EE035054
EXPIRES November 14, 2014
(407) 368-0153    FladniNotaryService.com

"BORROWER"

RADNO, INC., a Florida corporation

By:

Name:

Its: _____

STATE OF Florida
COUNTY OF Collier

The foregoing instrument was acknowledged before me this 10 day of October, 2013, by Peter J. Radno, as President _____ of RADNO, INC., a Florida corporation, on behalf of the company. He is personally known to me or ☐ has produced _____ as identification.

Notary Public, State of Florida
Name: Terri L. Poli
My Commission Expires: _____
My Commission Number is:

TERRI L. POLI
MY COMMISSION # EE035054
EXPIRES November 14, 2014
(407) 398-0153    FloridaNotaryService.com

"GUARANTORS"

PETER J. RADNO, SR., an individual

STATE OF Florida
COUNTY OF Collier

The foregoing instrument was acknowledged before me this 10 day of October, 2013, by PETER J. RADNO, SR., an individual. He ☑ is personally known to me or ☐ has produced _____ as identification.

Notary Public, State of Florida
Name: Terri L. Poli
My Commission Expires: _____
My Commission Number is:

TERRI L. POLI
MY COMMISSION # EE035054
EXPIRES November 14, 2014
(407) 398-0153    FloridaNotaryService.com

JAXUSD4912_3

-11-

## Exhibit "G"

### Demand Letter



Scott J. Kennelly

904 . 346 . 5583
SKennelly@rtlaw.com

1301 Riverplace Boulevard • Suite 1500
Jacksonville, Florida 32207.

904 . 398 . 3911 Main
904 . 396 . 0663 Fax
www.rtlaw.com

March 18, 2014

### VIA U.S. MAIL AND CERTIFIED MAIL,
### RETURN RECEIPT REQUESTED

Radno, Inc.
3565 Plover Avenue
Naples, Florida 34114

Peter J. Radno, Sr.
160 Lambton Lane
Naples, Florida 34104

Peter P. Radno, Jr.
7903 Founders Circle
Naples, Florida 34104

> RE:   IBERIABANK Loan #5300220906
> Notice of Defaults and Demand
> Demand for Surrender of Collateral

Dear Sir or Madam:

Please be advised that IBERIABANK ("Lender") has engaged our law firm to represent its interests in connection with the above-referenced loan (the "Loan") made to Radno, Inc., a Florida corporation d/b/a Goldcoast Salads ("Borrower"), and guaranteed by Peter J. Radno, Sr. and Peter P. Radno, Jr. (together, "Guarantors").

Loan.   The Loan was initially evidenced by that certain Promissory Note dated November 2, 2011 in the principal amount of $600,000.00, and is currently evidenced by that certain Promissory Note dated August 10, 2012 in the principal amount of $1,500,000.00, as modified by that certain Forbearance / Extension / Modification Agreement dated March 4, 2013, and that certain Forbearance / Extension / Modification Agreement dated July 23, 2013, all executed between Borrower and Lender (collectively, the "Note"). According to the terms of the Note, Borrower was required to make monthly payments of interest only through and including September 10, 2013 and then make monthly payments of principal and interest through and including February 10, 2018.

The indebtedness owed on the Loan is secured by that certain Commercial Security Agreement dated November 2, 2011, executed by Borrower in favor of Lender (the "Security Agreement"). In the Security Agreement, Borrower granted a security interest in equipment to be purchased, more particularly described as three major equipment items, a Commercial Generator, Commercial racking, and Commercial Compressor/Dryer, as well as any and all

Radno, Inc.
March 18, 2014
Page 2

collateral described in that certain UCC-1 Financing Statement filed with the Florida Secured Transaction Registry, bearing Document #201105640629, as modified by those certain UCC-3 Financing Statement Amendment Forms bearing Document #201206423070, #201207097339, #201207145619, #201207342783, #201207586547X, #201207698006, #201207785405, #201208085725, #201208085733, #201308631233, #201308802704, #201308830694, and #20130929320X (collectively, the "Collateral").

The indebtedness owed on the Loan is also secured by those certain Commercial Guaranty agreements dated November 2, 2011 and August 10, 2012, executed by Guarantors (collectively, the "Guaranties").

Defaults; Demand. After Borrower defaulted on its obligations under the Note by failing to maintain a debt service coverage ratio equal to or in excess of the Traditional DSCR and failing to maintain a global debt service coverage ratio equal to or in excess of the Global DSCR, as those terms are defined in the Loan Agreement (together, the "Covenant Defaults"), Lender, Borrower, and Guarantors entered into a Forbearance Agreement dated as of October 10, 2013 (the "Forbearance Agreement"). In the Forbearance Agreement, Borrower and Guarantors admitted the Covenant Defaults and Borrower agreed to continue making the required monthly payments of interest only on the Note. I have enclosed a copy of the fully executed Forbearance Agreement for your reference.

Our client informs us that Borrower is in default of its obligations under the Note and the Forbearance Agreement, and thereby Guarantors are in default under the Guaranties, by failing to make the interest-only payments due on October 10, 2013 and thereafter, by failing to make the principal and interest payment due on March 10, 2014, and due to the Covenant Defaults.[1] As of the date of this letter, the total amount owed by Borrower to Lender under the Note is $1,296,854.13 in principal, plus accrued interest, charges, and attorneys' fees and costs, which will continue to accrue (collectively, the "Debt"). There may be other defaults which have occurred under the Loan, and the fact that Lender has not provided notice of these at this time shall in no way be construed as a waiver of those defaults or of Lender's right to enforce them. Pursuant to its rights under the Loan documents, Lender declares that the total unpaid principal balance the Loan, together with all accrued interest and other charges, is due and payable in full, and demand for full payment is hereby made.

Pursuant to the terms of the Note and the Forbearance Agreement, since default, the unpaid principal balance of the Note may accrue interest at the rate of 18.000% per annum based on a year of 360 days, not to exceed the maximum rate permitted by Florida law (the "Default Rate"). This letter will serve as notice that the unpaid principal balance of the Loan may bear interest at the Default Rate. Further, upon an event of default under the Note, Borrower and Guarantors are obligated to pay all costs incurred by Lender in pursuing its remedies under the Loan documents, including legal fees.

---

[1] We understand that Lender has recently requested from Borrower updated financial disclosures in order to, among other things, evaluate the current debt service coverages.

Radno, Inc.
March 18, 2014
Page 3

Surrender of Collateral. In addition, Lender, through its counsel, hereby demands voluntary surrender of the Collateral. It is in the best interests of all parties for Borrower to cooperate and assist Lender with the voluntary surrender of the Collateral and to continue such cooperation through the disposition of the Collateral. Lender requests that the following specific actions be taken immediately by the Borrower: (1) provide Lender with an updated and detailed list of all of the Collateral; (2) provide Lender with any and all certificates of title to the Collateral; and (3) provide Lender with any and all keys for the locations at which the Collateral is located and with any access codes for operating any of the Collateral.

This notice is also intended to advise Borrower and Guarantors that neither continued discussions between the parties regarding the Loan, forbearance from the exercise of remedies under the applicable documents, nor the acceptance of partial payments of the Loan shall be deemed a waiver or cure of any events of default, or constitute a modification or withdrawal of the demands for payment or reinstatements of the Loan. This letter is not intended to include an exhaustive statement of all events of default under the Loan, nor a waiver by Lender of any event of default not specified above. Please be advised that Lender fully reserves all of its rights and remedies under the Note, the Security Agreement, the Guaranties, and all other documents related to the Loan.

Please govern yourselves accordingly. If you have any questions, feel free to contact me.

Sincerely,

Scott J. Kennelly

cc:     *Via U.S. Mail*
        Radno, Inc.
        c/o Michael Baviello, Registered Agent
        800 Seagate Drive, Suite 204
        Naples, Florida 34104

        *Via e-mail only*
        IBERIABANK

## Exhibit "H"

### Collateral

| Draws | Property Description | Serial # |
|---|---|---|
| 1 | 2 Chicago Pneumatic Compressors Rotary Item # CPE100-CP, Rotary Screw Drive 100 hp, TEFC Motor 460/3/60 Voltage TEFC, Wye-Delta, Reduced Voltage Start, 125 psi, 455 cfm 65 dba sound level, Computer Controlled | AP1210726 & AP1211180 |
| 2,8 | 1 Corey Compressor, Item #4002CCI, with any and all connections and bypass valving for all filters and dryer, with an Air Pipe System, Item 70MMSPEEDBLUE | n/a |
| 3, 8 | 1 Corey Compressor Dryer, Blower Purge Heat Regenerative Desiccant Dryer, 1010 cfm @100 psi, Dry Air Receiver, Wet Air Receiver with all accessories, valves gauges and additions | n/a |
| 4 | All Commercial Racking, included but not limited to Dry Storage, Freezer and Cooler | unserialized |
| | 308 Commercial Warehouse Pallet Racking, medium gauge | unserialized |
| 5 | 1 Tennat Ech2o Floor Scrubber with battery charger and brush assembly and Dicer Floor Scrubber | T7-10584624 |
| | 1 JLG Scissor Lift, Model 3246ES, electric | 200213762 |
| | Lot of Computer Systems including: (32) Dell E Series E2211H Widescreen LCD Monitors, (22) Dell Optiplex 7010 Small Form Facor PCs, (1) Dell Poweredge R420 Server w/ (2) 600GB HD & (3) 300GB HD, (1) DVD +/- RW Sata Drive | n/a |
| | 1 Urshel Model DC Diversacut 2110 with hopper extension | CP-3884 |
| | Miscellaneous assets including; voice & data wiring, security cameras, telephone system, UPS, surge protection, conduit installation and cooler/freezer door | n/a |
| 6 | 1 ET 75 400 lb/600 lb Buggy Washer | n/a |
| 7 | 1 TAW (Kohler 1000) Generator | 3051891 |
| | 2 Automatic Transfer Switches | K3048362; K3601484 |
| | 1 User Interface Cover | n/a |
| 9 | Lot of Office Furniture from Office Furniture Exchange | n/a |
| 10 | 100 CM Process Solutions Buggies, 600 lb capacity, stainless steel | unserialized |

-19-

| 11 | 1 Feed Hopper Extension, stainless steel | unserialized |
| 12, 15 | 1 Atlantic Systems Thawing Machine and Feed Conveyor<br>1 Thawing Machine Conveyor | 1337490325951237<br>n/a |
| 13 | 2 CM Process Solutions Single Column Mobile Dumpers, 480v<br>2 Marion USDA Sanitary Mixers | 11608 & 11609<br>12047 & 12048 |
| 14 | 1 2013 Toyota Electric Double Reach Truck, Model 8DB153M210, 3000 lb capacity, 210" max reach, with Battery and Charger<br>1 CM Process Solutions 400 lb/600 lb Buggy Washer | 8BDRU15-37048;<br>R48862; 179212<br>1161/ET75/1206/02j |
| 15 | 1 Marion Mixers Goldcoast 2000 Product Mixer | SN-13003 |
| 16 | 1 CM Process Solutions Single Column Mobile Dumper, 480v | 11637 |
| 17 | 1 Motion Industries Sanitary Elevating Belt Conveyer Machine | 161152 |